Chief Justice Robertson,
delivered the opinion of the court,
Fleming prosecutes this writ of error to. reverse a decree rendered against him for the specific execution of a covenant executed by him, on the 13th of March, Í806; whereby he promised- to convey, by deed, with special warranty, to Kenney, a tract of land on the south fork of Elkhorn, containing 110 acres as soon as he himself should obtain the title thereto, for the consideration of $1100 to be paid seven days after the. date of the covenant.
One of the boundaries designated in the covenant, calls for the bank of the creek and to run with its meanders.
It seems that it was not ascertained, at the date of the contract, whether 110 acres would include or exclude *156 an improvement, ealled “Littrai’s clearing,” which had’ been made on the tract of land out of which the 110 acres were to be taken. And therefore, immediately after the making of the contract, Kenney was permitted to take possession of the Littral tenement; of which be enjoyed the use and benefit for six years; when, ascertaining that his boundary would not include it, he surrendered it to Fleming.
Having enjoyed the possession andmse of the 110 acres from the date of the contract, and having paid, as. he alleged, the whole of the consideration, Kenney filed his bill in 1825, for a specific execution.
Fleming’s answer, which he made a cross bill, admits that he had “received part of the purchase money for the 110 acres; perhaps all,” but avers that the receipts filpd by Kenney “contain all the payments ever, made,” and therefore refers to them to show how much had been paid. It also declares, that he (Fleming) is perfectly willing to make a deed according to his contract; but insists that the middle of Elkhorn and not its margin, should be the boundary; and affirms that when Kenney took possession of Littrai’s improvement, he agreed to account for the l’ents of it, if it should not- be included in the boundary of his 110; that he received ,$¡40 a year rent for it, for six years, and had not accounted for any part of the rent; and therefore, the chancellor is requested, in decreeing a specific execution, to make the middle of the stream the boundary line, and to compel 'Kenney to account for the rents which he.had received.
Kenney admits, in his answer to the cross bill, that he had received ’$¡40 a year for six years, for the rent of the Littral tenement; but denies that he uever agreed to pay any. thing” for the use of it; and insists that the bank of Elldiorn shall bound his 110 acres.
In an amended answer, he pleads the statute of limitations to the claim for the rents.
The decree of the circuit court fixed the margiii of Elkhorn as the boundary, and- directed Kenney to pay to Fleming ‡2 50 cents, as the amount which the court supposed to be due for the land.
Lapse of' time, no bar-to a specific performance, if vendee has. been in possession!
Expressions in bond, “beginning on the bank of the creek,” “thence up the creek, with its meanders,” &c. the margin of the creek is its boundary.
So much of the decree must be approved, as directs a conveyance, fixes the boundary, and withholds pay for the rents.
The bill is not as explicit, nor as direct in its allega-, lions as it might have been, and as it should have been, to have authorized a decree for a specific execution, without an answer. If every allegation had been taken for confessed, a specific execution could not have been enforced. There is no intimation that Fleming had ever obtained the title or was able to convey it.
But the substantial defects in the bill are supplied by the exhibits, and more especially by the answer of Fleming.
The lapse of time is no bar to a specific execution. It was not relied on, but if it had been, it would have been a consideration tending strongly to favor rather than oppose the decree, as Kenney had been in the undisturbed possession of the land.
Fleming has not shown that the boundary fixed by the decree is unreasonable, or inconsistent with his covenant. The expressions “beginning on the bank of the creek;” “thence up the creek with its meanders,” &c. import literally that the margin of the creek is the boundary; and there is nothing in the covenant, nor in the record, which can control, or in any degree affect this construction. It is not even shown that Fleming ever owned or now owns the bed of the creek. We will not say, how far the literal construction of the covenant might have been affected by the fact, if it' had been proved, that Fleming’s boundary included the bed of Elkborn, and was restricted to the margin on the side opposite to the beginning, designated in the covenant, for the 110 acres. Perhaps this fact might, under peculiar circumstances, show that the entire bed of the creek was intended to be included; and that the beginning was designated on one bank, instead of the other, because it was more convenient thus to describe it. But then the opposite bank and not the middle of the stream would be the line of boundary.
If Fleming had proved that he owned the bed of the creek and the land on the side opposite to that on which the 110 acres lie, this fact, so far from changing, would have tended to confirm the liberal interpretation of his covenant. When a river is the boundary between two *158 nations or countries and is common to both, each has territorial right to the middle of the ordinary channel, anda common jurisdictional right over the entire channel.
Vendor, owning on both Bides of a creek, gives his bond for land,‘to begin onthebankof ■the creek, and to run with its meanders,’ the stream be-lowl iw-water mark, is excluded.
When a river is the boundary between two nations, Jf the priginal property is in neither, and there be no convention respecting it, each holds to the middle of the stream
When two individuals appropriate land on a stream not navigable, each making the middle of the creek the boundary, the title of each extends to the middle of the stream. In such a case it is probable that either of them in selling or conveying his entire tract, by the tract, would describe it as being bounded by the margin of the stream; and it would be conceded that if no other controlling expressions were used, “beginning on the bank and thence with the meanders,” might be construed to include half the stream, or in other words, all the land belonging to the vendor. But Fleming has shown no such case.
If, as is most probable, Fleming owned the land on both sides of Elkhorn, his covenant should be construed to include the whole of the stream below the line defined by “low-water mark.” See Sanders vs. McCracken, Hardin 258.
The state of Virginia owning the territory on both sides of the Ohio river, ceded to the “confederation,” all tire territory which she owned on the north side of the river; and it never has been doubted that she retained her dominion over the river, and that the north western territory was bounded by low-water mark on the north bank. “When a river is the boundary between two nations or states, if the original property is in neither, and there be no convention respecting it, each holds to the middle of the stream. But when, as on this case, one state (Virginia) was the original proprietor, and grants the territory on one side only, it retains the river within its own domain and- the newly-erected state extends to the river only, and the 10w-wa-ter mark is the boundary.” Handley’s lessee vs. Anthony, et al. V Wheaton, 374.
The same doctrine applies with equal force to similar cases between individuals. See, also, III Kent’s Commentaries, 344.
The necessary consequence, according to the cove" nant and the record in this case, is that the circuit court defined the proper boundary in its decree.
*159 There can be no doubt that Kenney is under a clécár moral obligation to pay to Fleming the amount which he received for the rents of the Inttral improvement. He admits that this improvement is not within the boundary of his 110 acres, and that he is not entitled tb it. He admits that he rented it out for six years, and ré-ceived $240 for rents. He admits that he has never paid to Fleming, one cent for these rents; but relies solely on the allegation that he never agreed to pay any thing. We are satisfied that he did agree expressly to pay the rents; but if he did not ex quo et cebono the law would imply a promise to pay whatever he received.
Ills obligation to pay is now, however, only moral; and that does not seem to be strong enough for his conscience. He has “plead the act” of limitaiions, and this court has no power to control him.
At the expiration of the six years (in 1812) when it was ascertained • that the Littral improvement would not belong to Kenney, he gave it up to Fleming. Fleming’s cause of action for the rents then accrued. This right was independent of the contract for the convey- ■ anee of the 110 acres, as soon as they were disconnected, by the ascertainment of the fact that Kenney would not be entitled to the improvement, and when he ceased, in consequence thereof, to occupy or use it.
The legal right to compel him to pay for the six years’ rents, is therefore barred and lost by the performance and indulgence of Fleming; and as equity follows the law, and nothing is shown, which in equity, will prevent the statute from operating, the bar is conclusive in this case.
But there is error in the decree. The circuit court has decreed that Fleming is entitled to only $2 50. If this decree stand he can never recover any more; Therefore, if .according to the proof he appears to be entitled to more., although the promise to pay the consideration and the covenant to convey the land are independent of each other, the decree should be reversed;
The receipts show, that on the llth of May, 1807, there remained due to Fleming, ,s(BG 5b'l cents, or thereabouts. The only payment which appears to have been made since that time, was one of $55 on the 28th of September, 1818; Calculating the interest on the *160 balance due in 1807 (as should be done) until 1818, á greater residuum will be produced, than $2 50 cents.
Haggm, for plaintiff; Depew, for defendant,
One witness swears that, when a receipt for $900 was given, Fleming agreed to allow for premium on $900 in United States bank paper which Kenney then paid to him, whatever the rate of exchange should be ascertained to be; and he also swrears that the exchange Was then 2 1-2 per cent in favbr of the hank notes. This premium, if allowed, would not reduce the balance due to Fleming, as low as $2 50 cents. But the proof is insufficient. Fleming Swears in his answer that the receipts show the whole amount which he ever received. The receipt for $900, is positive, and contains no intimation that more than that sum had been then paid.
Kenney has not even intimated in his bill, or in any 'other of his answers to the cross hill, that he had paid 'more than the receipts import. Under these circumstances, there can be no doubt that the receipts are not affected by the deposition of one witness, and therefore, must constitute the evidence of what has been paid, ■and of wrhat remains due.
Wherefore, the decree of the circuit court is reversed and the cause remanded wdth instructions to modify the decree according to the principles of this opinions