Chief Justice Robertson
delivered the Opinion of the Court.
About the last of May, 18'31, William Chambers, now defendant in error, brought a suit in chancery, in the' Jefferson- Circuit Court, against the plaintiffs in error— some as owners and others as officers of the steam boat ^agn0^at f°r purpose of recovering damages char-to have accrued to him, in consequence of three of his slaves having been taken, about the 1st of May, 1831, from-Kentucky, near Louisville, where he resided, and carried, without his consent, as passengers on board of the said boat, to Cincinnati, whence they had disappeared and gone, as was presumed, to Canada.
Lenox, one of those who were described in the bill, as the owners of the boat, was not made a party to the suit, either by appearance, or by the service of notice, actual or constructive. All the others, who were prayed to be made defendants, answered the bill, and virtually denied its'material allegations.'
The Record shows- that, whilst Church, who was the master and one of the owners of the boat, was disabled by sickness, the slaves- of the defendant in error, having crossed the Ohio river, from the Indiana to the Kentucky 'shore at Louisville, agreed with McManaway, who was acting as master, ad interim, and with Neyde'nbousch, the clerk of the boat, for their passage to Cincinnati; that, pursuant to the agreement thus made, they were afterwards taken on board from the Indiana shore, some miles above Louisville, and carried to Cincinnati; and that they had been, shortly afterwards, pursued and sought after by the agent of the defendant, who believed from what he learned in- the pursuit, tha-t they had fled to1 Canada.
not served with pr0cess. To decree a* gainst “tbéówit, ers” of a boat— no other description — is erroneous, especially auto one who waS
For taking slaves ^boat! the owners, when liable, áre liable jointly with the officers; and it is erroneous to decree a~ gainst them, in personam, in the-first instance.
Owners of boats. in which slaves, not^erson! ally liable when. teney in the°act,. The commander st®“m boat or other vessel, who,with, a^yths0]ave* or suffers any to ®t0a¿e0,1as °af pag3' songer in his boat tie (by an act ofi 1324) to indjctagesuftheparty injured — to payment of which ti,e! boat may be.subjected, by lull m chancery.— or vessel, is lia-
And, the owners and officers are also liable (by act of 1828) at law or in chancery, jointly with the master, or severally — whether the slaves are taken from this state, or the opposite shore of the Ohio. But—
On this state of case, the Circuit Court rendered a decree against “the owners of the boat,” in- solido, for the value of the slaves, and for the sum expended in hunting for them, and also for the sale of the boat, if such sale should become necessary, for satisfying the decree;
That decree is now complained of, and must be reversed for the following reasons.
First. It was erroneous to decree against “the owners,” without any other designation for personal identification, and especially as such a decree, if effectual, would include Lenox who was never made a party.
Second. The decree is against “the owners,” in perso- ,, - , . , , , , . nam, m the first instance, though it might eventually be enforced in rem; and the owners, if liable at all, are liable jointly with the officers of the boat, who were the actual wrong-doers; and therefore, McManaway and Neydenbousch should have been made at least contributors to the payment of the sum which was decreed for damages.
Third. But we are of the opinion that, as there was no proof that the owners, or any one of them, had any personal agency in the carrying of the slaves to Cincinnati, they should not he held personally responsible for damages in virtue of the statute law of this state.
This suit is prosecuted under the statutes of 1824 and of 1828 (1. Stat. Law, 259 — 60.) The act of 1824, in substance and effect, provides, that every master or ’ r ’ commander of a steam boat, or other vessel, who shall, without a prescribed authority, take or suffer to be taken as a passenger, “out of the limits of this state,” any person of color, shall be liable to an indictment, and to an action for damages to any person who may have been thereby aggrieved; and that the boat or vessel may, by a suit in chancery, be subjected to the satisfactionof such damages as shall have been recovered.
The act of 1828 applies the provisions of that of 1824 i -i . t i rr. „ to the owners and the subaltern officers, “as well as the master,” and authorizes either a suit in chancery or at 7 ^ *276 law, “either jointly with the master, or severally,” and: also, extends to a taking from, or a landing on, the shore-of the Ohio “opposite to this state;” but restricts both enactments to such persons of color as are slaves.
The joint liability accrues only where the act complained of,, was joint. Where one alone com, mits the act,, he alone is personally liable; and. where several participate, they,, and they only,, may all be sued, jointly or severally. And for the damages incurred by any of them, the boat or vessel, may be sold..
The act of 1828 does not declare, that an owner shall, be personally responsible for the act of a master of his boat, in violation of the statute of 1824; but it, declares merely, that the provisions of the act of 1824 shall apply to owners, &c. “as well as to masters.” By making such an application, the same effect will be produced,, as that which would have followed the insertion, in the. act of 1824, of “owner,” “pilot,” or “clerk,” next to “master.” Had the act of 1824 thus read — “if any master, or owner, or pilot, or. clerk of any boat shall, &c. he shall be liable, &c.” it is. evident, that each of those, persons would be personally and exclusively responsible for his own illegal act, and neither of them would be personally liable for the unauthorized act of another. And hence the liability would be, several, except when the prohibited, act had been joint, in which case alone, either, a joint or several suit might be maintained^
And such is, in our opinion, the true constructive import and effect of the acts of 1.824 and 1828. If the. master, .without the authority of the owner, violate the. act of 1824, the owner can neither be indicted nor sued for damages, under that act, or that of 1828..
If the owner violate this enactment, without the privity or co-operation, of the pilot or clerk, surely neither of the latter should be liable to an indictment, or to a civil suit for the. owner’s, wrongful act. Such could not have been the intention, of the act of 182.8, and is inconsistent with the literal and rational interpretation of it. The word “suffer” in.the act of 1824, should, we think, be understood to have been used synonymously with “permit,” or “authorize,” or “sanction.” And consequently, according to. our construction of the two statutes,.taken together, the owners of the Magnolia are not,, upon the proof in this case, personally liable for damages under those penal enactments. It cannot be reasonably inferred that they, or any one of them, had any agency, direct or indirect, actual or implied, in the *277 act of taking on board and carrying the slaves of the defendant in error. Of course, their only responsibility was the eventual hazard of a judgment or decree, against the actual delinquents, for damages, being enforced by a sale of the boat, on which the statute of 1824 gave a lien. The decree against them personally is therefore erroneous.
The measure of damages against masters, #c. of' boats, fyc. for carrying away slaves, under the acts of 1824 — 8,. is not the full value of the slaves, as in a case of conversion; but the actual damages to» the slave-holder or party injured ; which cannot, in general, be presumed equal to-the entire loss of the property.
Arguments urge$ ^1" of 24 and 28, to» béfng carriedVoff as passengers ia 0d s‘
Fourth. The decree, were it in other respects unexceptionable, is for a larger sum than the facts justified. According to a proper construction of the acts of 1824 — 8, when applied to the facts of. this case, the amount decreed must be deemed exorbitant. The damages were decreed, not for a conversion of the slaves, but for the actual loss which resulted to the owner, from the unlawful act of carrying them as passengers to Cincinnati. That loss cannot be presumed to be equal to the value of the slaves; because there is no proof which would render it morally certain, or even probable, that the slaves will have been irretrievably lost to the defendant, in consequence of the transportation of them to Cincinnati. There may be some difficulty in estimating the actual damage; but it is certainly not shown to be equal to the entire value of the slaves. The enquiry for them at Cincinnati, was made only a few weeks after their disembarkation at that place. And, even if we could presume, that they are irrecoverably lost to the defendant, it is far from being certain that the loss has been the consequence, altogether, of their transportation on the Magnolia, to Cincinnati.
Nevertheless, it is evident, that the defendant is entitled to some damages, because it is evident that he has sustained damage to some extent. The true standard of assessment is the probable loss that has been occasioned by the unlawful acts of the acting officers of the boat..
And this brings us to the question whether there has been any violation of any valid law» — respecting which, several positions have been urged in argument, by the counsel for the plaintiffs in error: and therefore, as the case will be remanded for the errors which have been: noticed,, and as the radical point we are about to consid *278 er will recur in the Circuit Court — it is deemed proper! now to dispose of the question thus presented.
The acts to prevent slaves being carried away as passengers in steam boats,prohibits the taking of them from the shores of the Ohio, opposite this state — and liabilities are also, incurred by landing, or permitting them to go ashore, within or out of this state: not invalid,
The Ohio river, ao far as it is the tuckyOs within her jurisdiction; a concurrent jurisdiction being reserved to the states on the opposite side — and the use and navigation free to all the citizens of theU. S.; and the laws ofthis state, not in conflict with the rights thus conceded, operate on that part of the river, from shore to shore. The acta of 24 and 28, to prevent slaves being carried away as passengers in boats, are not in conflict with the concurrent jurisdiction of other states, nor with the free and common right to the use ye. of the Ohio river — and are valid acts.
*278 The counsel for the plaintiffs has insisted, that the defendant has no right to any damages, in virtue of the statutes of 1824 and 1828: first — because, as he contends, the slaves were not taken from Kentucky, not being, as he endeavored to show, in this state w'hen they were taken on board; and, if they were then in this state, not being out of it when they disembarked. Second — because the statutes of 1824 — 8 cannot operate on acts done out of the jurisdictional limits of Kentucky. And third — because the free navigation of the Ohio river, as far as it bounds Kentucky, having been guarantied to the citizens of all the states, no state has, to that extent, a right to legislate respecting the commerce or navigation of that river.
These arguments will be briefly considered, in their numerical order.
First. It is not material to inquire whether, as the passage to Cincinnati was engaged at Louisville, where the boat and the slaves then were, and as they actually went on board from the Indiana shore, according to previous arrangement, for the purpose probably of evading the act of 1824, — they should be deemed to have been virtually taken from Kentucky, even if, when they entered the boat, they were not within the jurisdiction of Kentucky; because the supplemental act of 1828, in full force at that time, embraces the case upon either hypothesis; for it declares, that “the liabilities under said “ act (the act oí 1824,) shall accrue whenever the per- “ son of color shall be taken on board any steam vessel “ from the shores of the Ohio river opposite to this state— “ and the like liability shall occur for landing, or suffer- “ ing them to go on shore, within as without the state;” and we are of the opinion, that this enactment is not invalid for want of competent authority in the Legislature of Kentucky. And this brings us to the second point.
Second. The Ohio river, as far as it is a boundary of this State, is within its jurisdiction. The eleventh artide of the compact with Virginia, only guaranties to- *279 the citizens of all the states, “free and common use and « navigation of the river” — and to “the states possessing “ the shores opposite to Virginia and Kentucky, a con- “ current jurisdiction.”
Now, although the local laws of Kentucky cannot, proprio vigore, operate extra terriloriam, except so far as they may bind the citizens of Kentucky, as óitizens, wherever they may be; nevertheless, they may operate on all persons, on so much of the Ohio river-as is within the jurisdictional limits of Kentucky, if they be consistent with the guarantee of free and common navigation and commerce; and the enactments of 1824 — 8 are not, in our opinion, incompatible with such commerce and navigation, when those terms are understood in their true and legitimate import; and this involves a decision of the third and last point.
Third. A state having a concurrent jurisdiction of the Ohio river, may certainly pass laws for preventing-crimes and torts upon it without denying, in the least degree, to every citizen of the United States equal right to the lawful use and navigation of it, according to the full spirit and policy of the guarantee in the compact. And therefore, Kentucky had a right to declare, that the abduction of slaves, or the deportation or transportation of them, in vessels on the Ohio river, within her jurisdiction, without the consent of the owners, and to their damage, should be unlawful. No question respecting a conflict of laws has arisen, or can probably ever arise, to produce embarrassment or vexation in the enforcement of such an enactment.
Nor do the statutes of 1824 — 8 interfere with the rightful power of the federal government to regulate commerce and navigation among the states. The acts forbidden are, in their nature, tortious; and the articles interdicted are, in their legal character, contraband, unless the consent of the owners be given. A person is not forbidden to carry, on the river, his own slaves, or the slaves of another with his consent. Such an interdiction Kentucky would have no right to enforce, because it would conflict with the freedom of commerce and navigation. But, having a legislative jurisdiction *280 over so much of the Ohio river as is within her chartered boundary — and that is the whole of it from shore to shore lying on her border — she has power to prevent the carrying of slaves, to that extent, on the river without the consent of the owners. Her right to do so, is as unquestionable as is that of punishing murder or theft on the same river, within her jurisdiction; and the latter right cannot be questioned.
But, for the errors which have been suggested, the decree of the Circuit Court must be reversed, and the cause remanded.