**LOUISVILLE SAND & GRAVEL CO.**

v.

**RALSTON et al.**

Court of Appeals of Kentucky.

March 19, 1954.

120

Robert P. Hobson, Woodward, Hobson & Fulton, Louisville, for appellant.

Evan Harrod, Turner & Turner, Newcastle, for appellees.

MILLIKEN, Justice.

The problem presented on this appeal is the exact location in the Ohio River of the dividing line between property owned by private riparian owners and that property between the northern low watermark and the "thread of the stream" which is deemed unappropriated land belonging to the state.

We are asked to determine the meaning of the words "thread of the stream" as applied to the Ohio River, and to declare whether the property rights of riparian owners extend to the middle of the river (at normal stage) opposite their land or to the center line of the main channel. The appellant, Louisville Sand and Gravel Company, has a lease from Trimble County for dredging sand and gravel "north of the thread of the stream" as authorized by KRS 56.220. The appellees, L. G. Ralston and wife, owners of 141 acres bordering the river, obtained judgment for $601.20 against the company for dredging on their land. The company had dredged south of the middle of the river but north of the center line of the main channel which was close to the Kentucky shore at this point. No dredging was done south of the center line of the main channel. Because of the import of the question involved, we granted an appeal in conformity with Section 745 of the Civil Code of Practice.

The pioneer case in Kentucky, Berry v. Snyder, 3 Bush 266, 66 Ky. 266, decided in 1867, arose in Jamestown (now Dayton), Campbell County, and involved the 1,000-acre patent of 1787 by the State of Virginia to James Taylor as assignee of George Muse. As a Virginia patent, "issued before the separation of Kentucky from her, the rights of the patentee vested under the laws of Virginia, and are protected by the compact between her and her daughter, Kentucky; * * *. The terms of the original grant by Virginia to James Taylor do not exclude the land between ordinary high water mark and middle of the main channel; therefore, the grant conveyed the land to the middle of the main channel of the river, and, consequently, all accretions belonged to the riparian owner as an incident to his title." The real issue in the Berry case was the ownership of a sand bar admittedly south of both the main channel and the middle of the river, and, as a consequence, it was not necessary for the court to distinguish the two or to locate and define the meaning of "thread of the stream." In fact, the court quoted with seeming approval Chancellor Kent's rule that "where a stream is used in a grant as a boundary or monument, it is used as an entirety to the center of it, and, to that extent, the fee passes." In a dissenting opinion, Judge Robertson declared: "In my judgment, therefore, it was not necessary in this case to decide whether the patent to Taylor * * * extends to the middle thread of the river or only to low water-

mark; and, consequently, wanting time for the full and thorough investigation which such a question eminently deserves, I preferred to forbear an unnecessary decision, by a divided court, of a doctrine so important and hazardous as that of the constructive extent of Taylor's grant." In his dissent, Judge Robertson contended that the state owned the bed of the. river and that the land of the riparian owners extended only to the low watermark on the Kentucky side of the river, a viewpoint later widely adopted in this country.

Our decisions subsequent to Berry v. Snyder, above, help little in the case at bar. In Willis v. Boyd, 1928, 224 Ky. 732, 7 S.W. 2d 216, 218, we said, "It is. well known that our state boundary is along the north bank of the Ohio river at low-water mark. Nevertheless, in construing patents to the Kentucky mainland adjoining that river and calling for the shore line as a boundary, our decisions are uniform in holding that the rights of the riparian owners extend to the thread of the stream. Such grants do not carry title to the bed of the river between the thread of the stream and the northern shore", citing no cases. To the same effect is Bedford-Nugent Co. v. Herndon, 1922, 196 Ky. 477, 244 S.W. 908, 909, that "land-owners on the Kentucky side own only to the thread of the stream." In this latter case, an instruction was approved that a riparian owner's title "extends to the middle of the river", and the reasoning in the opinion is on that theory, but no authority is cited to support it. In 1907, in Ware v. Hager, Auditor, 126 Ky. 324, 103 S.W. 283, 31 Ky.Law Rep. 728, it was contended that Kentucky patents for land on the south bank of the Ohio River should be construed to extend to the state boundary, the low watermark on the northern side of the river, but this contention was rejected and the decision in Berry v. Snyder followed.

It is obvious that this court in Berry v. Snyder followed the English or common law rule to the effect that the property of riparian owners along a non-tidal, fresh water river extended to the middle or thread of the stream. In our opinion in

that case, the court said, 3 Bush at page 277, 66 Ky. at page 277, "Thus, at a very early period the common law of our British ancestors fully recognized the proprietorship of the owners of the soil to the middle of the main channel of fresh water rivers, which were recognized as public highways, and in which the public had the unobstructed right of navigation, and with which the owner of the soil could in no manner interfere * * *." This is a clear-cut approval of the English rule that "land under water which is non-tidal in character belongs prima facie not to the Crown, but to the riparian owners, each owning to the middle or thread of the stream." Tiffany, Real Property, Third Edition, Section 661, Citing Pearce v. Scotcher, 9 Q.B.Div. 162; Orrwing v. Colquhoun, 2 App.Cas. 839; Reece v. Miller, 8 Q.B.Div. 626.

According to 11 C.J.S., Boundaries, § 33, page 578, "The thread of a stream is the line midway between the opposite shorelines, when the water is in its natural and ordinary stage, at medium height, and neither swollen by freshets nor shrunken by droughts, although it has also been held that, where the thread as so placed would be exposed when the water recedes to its ordinary low stage, due to the fact that one of the banks slopes more gradually than the other, the thread will be considered to be the midway line when the water is at such low stage, and that the thread of a nonnavigable river is the line of the water at its lowest stage. In locating the thread no account is taken of the main channel or current, nor of the lowest and deepest part of the stream." To the same general effect, 8 Am.Jur., Boundaries, Section 28, page 765; Tiffany, Real Property, Third Edition, Section 661, pages 704, 705.

From a practical standpoint, in most instances, if a fixed point is obtained from which to begin measurement, the common law rule can be applied with convenience. In the case at bar, the fixed point is the low watermark on the northern shore, the adjudicated northern boundary of Ken-

tucky. In 1820 the United States Supreme Court declared in Handly's Lessee v. Anthony, 5 Wheat 374, 5 L.Ed. 113, in an opinion by Chief Justice Marshall, that "we must recollect that it is not the bank of the river, but the river itself, at which the cession of Virginia commences. She conveys to Congress all her right to the territory 'situate, lying, and being, to the northwest of the river Ohio' * * *. Wherever the river is a boundary between states, it is the main, the permanent river, which constitutes that boundary; and the mind will find itself embarrassed with insurmountable difficulty in attempting to draw any other line than the low watermark. * * * The State of Virginia intended to make the great river Ohio, throughout its extent, the boundary between the territory ceded to the United States and herself. When that part of Virginia which is now Kentucky became a separate state, the river was the boundary between the new states created by Congress in the ceded territory and Kentucky * *

■ It is our conclusion that the expression "thread of the stream" as applied to the Ohio River means the middle line of the river as measured from the state's northern boundary, the low watermark on the northern bank or shore, and the corresponding low watermark on the southern bank or shore.

The judgment is affirmed.