## OHIO *v.* KENTUCKY

No. 27, Orig.   Argued January 10, 1973—Decided March 5, 1973

BLACKMUN, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, STEWART, WHITE, MARSHALL, POWELL, and REHNQUIST, JJ., joined.   DOUGLAS, J., filed a dissenting opinion, *post,* p. 652.

*Joseph M. Howard* argued the cause for plaintiff on exceptions to the Report of the Special Master.   With him on the brief was *William J. Brown,* Attorney General of Ohio.

*John M. Famularo,* Assistant Attorney General of Kentucky, argued the cause for defendant *pro hac vice* in answer to exceptions to the Report of the Special Master.   With him on the brief were *Ed W. Hancock,*

Attorney General, and *James M. Ringo,* Assistant Attorney General.

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

Almost seven years ago, in March 1966, the State of Ohio instituted this original action against the Commonwealth of Kentucky. By its prayer for relief in its proposed bill of complaint, Ohio asked only that the Court declare and establish:

> "1. The boundary line between the State of Ohio and the State of Kentucky as being the low water mark on the northerly side of the Ohio River in the year 1792 . . . .
>
> "2. The State of Ohio and the State of Kentucky have equal and concurrent jurisdiction over and on all of the Ohio River from the northerly shore to the southerly shore, except jurisdiction incidental to the sovereignty of the soil under the river and structures permanently attached thereto."

In its complaint Ohio alleged:

> "4. The State of Ohio was established from the land ceded by legislative act of the Commonwealth of Virginia to the United States on the 1st day of March, 1784, which act is known as the Cession of Virginia.
>
> "5. The State of Kentucky was established by the separation of the District of Kentucky from the jurisdiction of the Commonwealth of Virginia pursuant to that certain act of the Virginia Legislature entitled 'An Act concerning the erection of the district of Kentucky into an independent state,' passed on the 18th day of December, 1789, which act is known as the Virginia-Kentucky Compact.

"6. The northern boundary line of the State of Kentucky was established from the Cession of Virginia and the Virginia-Kentucky Compact as the low water mark on the northerly side of the Ohio River as it existed in the year 1792." [1]

Ohio went on to allege: From 1910 to 1929, the United States erected dams in the Ohio River for navigational purposes. Since 1955, it has been replacing the earlier dams with higher ones. This has caused the waters of the river to rise and permanently inundate various areas of both Ohio and Kentucky. "As a result, the shores or banks of the Ohio River have been moved farther northerly and southerly as the water levels have increased by the damming of the river." The north low water mark of 1792 "has been obscured by the increased elevation of the water levels." Kentucky has claimed that the line between the two States is "along the present northerly shore line of the Ohio River rather than the 1792 northerly low water mark which is located to the south of the present north shore line." Ohio "does now and has always claimed . . . that the boundary between it and Kentucky is the 1792 northerly low water mark."

Leave to file the bill of complaint was granted. 384 U. S. 982 (1966). Kentucky by its answer admitted the allegations of the above-quoted numbered paragraphs of Ohio's complaint. The Court then appointed the Honorable Phillip Forman as Special Master in the case. 385 U. S. 803 (1966).

Five years later, in August 1971, Ohio moved for leave to file an amended complaint. By this amendment Ohio would assert that the boundary between it and Kentucky is the middle of the Ohio River, or, only alternatively, is the 1792 low water mark on the northerly

---

[1] 1792 is the year Kentucky became a State. 1 Stat. 189.

shore. We referred the motion to the Special Master. 404 U. S. 933 (1971). He held a hearing and in due course filed his report. 406 U. S. 915 (1972). The Master recommended that this Court enter its order denying Ohio's petition for leave to amend. His conclusion rested on the ground "that the proposed amendment, in any view of its factual allegations, fails as a matter of law to state a cause of action." Report 16. Upon the filing of Ohio's exceptions and Kentucky's reply, we set the matter for argument. 409 U. S. 974 (1972).

## I

Accepted procedures for an ordinary case in this posture would probably lead us to conclude that the motion for leave to file should be granted, and the case would then proceed to trial or judgment on the pleadings. This, however, is not an ordinary case. It is one within the original and exclusive jurisdiction of the Court. Const., Art. III, § 2; 28 U. S. C. § 1251 (a). Procedures governing the exercise of our original jurisdiction are not invariably governed by common-law precedent or by current rules of civil procedure. See United States Supreme Court Rule 9; *Rhode Island* v. *Massachusetts,* 14 Pet. 210 (1840). Under our rules, the requirement of a motion for leave to file a complaint, and the requirement of a brief in opposition, permit and enable us to dispose of matters at a preliminary stage. See, for example, *Alabama* v. *Texas,* 347 U. S. 272 (1954); *California* v. *Washington,* 358 U. S. 64 (1958); *Virginia* v. *West Virginia,* 234 U. S. 117, 121 (1914). Our object in original cases is to have the parties, as promptly as possible, reach and argue the merits of the controversy presented. To this end, where feasible, we dispose of issues that would only serve to delay adjudication on the merits and needlessly add to the expense that the litigants must bear.

This case is peculiarly susceptible to treatment of that kind. The allegations in Ohio's proposed amendment are not as yet formally controverted by Kentucky. We, therefore, treat the new material as admitted. Kentucky asserts, however, that, even assuming the new allegations to be true, no cause of action is stated, for the subject matter of Ohio's proposed amendment is barred as a matter of law.

## II

In *Handly's Lessee* v. *Anthony*, 5 Wheat. 374 (1820), this Court stated that the boundary between Indiana and Kentucky was the low water mark on the western or northwestern side of the Ohio River. *Handly* was an action for ejectment brought by a plaintiff claiming under a grant from Kentucky against defendants claiming under a grant "from the United States, as being part of Indiana." *Id.*, at 375. The disputed land was a neck south of a channel, or bayou, that had formed north of the main river. When the river was high, the channel filled and cut off the land to the north. When the river was low, the channel was dry in part and the separation did not exist. The resolution of the case turned on whether the land was in Indiana or in Kentucky. Indiana, like Ohio, received its territory from the United States. The Court in *Handly* observed that the question "depends chiefly on the land law of Virginia, and on the cession made by that State to the United States," *id.*, at 376, and concluded that the United States acquired title from Virginia when negotiations during the period from 1781–1784 resulted in Virginia's ceding its lands north and west of the Ohio River to the Federal Government.[2] Kentucky was received as a State of the

---

[2] Recommendation of the Continental Congress, September 6, 1780, 10 W. Hening, Laws of Virginia 562 (1822); Resolution of the General Assembly of Virginia, January 2, 1781, conditioned, among other

Union in 1792 out of territory Virginia purported to retain at the time of the 1784 cession. The Court concluded, on the basis of this history, that Kentucky, through Virginia, extended up to the low water mark on the northern, or far, side of the Ohio River. Mr. Chief Justice Marshall enunciated the following, now familiar, principle:

> "When a great river is the boundary between two nations or states, if the original property is in neither, and there be no convention respecting it, each holds to the middle of the stream. But when, as in this case, one State is the original proprietor, and grants the territory on one side only, it retains the river within its own domain, and the newly-created State extends to the river only. The river, however, is its boundary." 5 Wheat., at 379.

The rule of the *Handly* case, as well as its specific application to the Kentucky-Indiana border, has been

---

things, upon ratification of the Articles of Confederation and upon like cessions by other States, *id.*, at 564, 567; Act of the Continental Congress, September 13, 1783, 25 J. of the Cont. Cong. 1774–1789, p. 559 (1922); Act of Confirmation, October 20, 1783, 11 W. Hening, Laws of Virginia 326 (1823); Act of the Continental Congress, March 1, 1784, 1 Laws of the United States 472 (B. & D. ed. 1815).

The 1781 Virginia resolution recited that the Commonwealth "will yield to the congress of the United States . . . all right, title, and claim that the said commonwealth hath to the lands northwest of the river Ohio." 10 W. Hening, Laws of Virginia 564 (1822). Among the proposed conditions was also a guarantee by the United States to Virginia of "all the remaining territory of Virginia included between the Atlantic Ocean and the south east side of the river Ohio." *Id.*, at 566. This latter condition was not agreed to by the Congress by its Act of 1783. 25 J. of the Cont. Cong. 1774–1789, p. 563 (1922).

The 1783 Act referred to territory "to the north-west of the river Ohio." 11 W. Hening, Laws of Virginia 327. So, too, did the deed of March 1, 1784, from Virginia to the United States accepted by Congress on the same day. 1 Laws of the United States, *supra*, at 474.

consistently adhered .to in subsequent decisions of this Court. *Indiana* v. *Kentucky,* 136 U. S. 479 (1890) (despite Indiana's argument, *id.,* at 486–493, that its boundary was the middle of the river); *Henderson Bridge Co.* v. *Henderson City,* 173 U. S. 592 (1899); [3] *Nicoulin* v. *O'Brien,* 248 U. S. 113 (1918). It has been explicitly recognized by the Supreme Court of Ohio in *Booth* v. *Shepherd,* 8 Ohio St. 243, 247–248 (1858), where it was stated with far greater precision than the mere assumption the dissent suggests, *post,* at 654–655, that:

> "The construction given to the Virginia deed of cession by the supreme court of the United States, having been thus acquiesced in and acted on by the courts, both of Virginia and Ohio, may be regarded as decisive of the question."

See also *Lessee of McCullock* v. *Aten,* 2 Ohio 307, 310 (1826); *Lessee of Blanchard* v. *Porter,* 11 Ohio 138, 142 (1841). [4] See *Commonwealth* v. *Garner,* 3 Gratt. 655 (Gen. Court of Va. 1846).

In order to counter this history, Ohio argues that, as it was not a party to the *Handly* case, or to any of the later cases in this Court that reaffirmed *Handly,* it is not bound by the rule there established, which it characterizes as dictum. In particular, Ohio contends that it is free to challenge the conclusion that Virginia, prior to ceding

---

[3] "Upon this question of boundary nothing can be added to what was said in the cases cited; and it must be assumed as indisputable that the boundary of Kentucky extends to low-water mark on the western and northwestern banks of the Ohio River." *Henderson Bridge Co.* v. *Henderson City,* 173 U. S. 592, 613 (1899).

[4] There is a possible intimation to the contrary in the bridge tax case of *Covington & Cincinnati Bridge Co.* v. *Mayer,* 31 Ohio St. 317, 327, 329 (1877). The case appears, however, to have been resolved on the content of the bridge company's Ohio charter granting permission for the erection of the bridge. See *Sebastian* v. *Covington & Cincinnati Bridge Co.,* 21 Ohio St. 451 (1871).

the land that now encompasses both Indiana and Ohio, held good title to that land.

*Handly* and the later decisions to which Ohio was not a party of course do not foreclose Ohio's claim in a *res judicata* sense. But proceedings under this Court's original jurisdiction are basically equitable in nature, *Rhode Island* v. *Massachusetts,* 14 Pet. 210 (1840), and a claim not technically precluded nonetheless may be foreclosed by acquiescence. *Indiana* v. *Kentucky,* 136 U. S., at 510, 518. We turn to that aspect of the present case.

## III

By its amended complaint Ohio seeks to re-examine an accepted premise of the *Handly* decision and, in the process of doing so, to alter legal rights that, as a practical matter, have long been settled. By presently claiming ownership of half the Ohio River, Ohio does not assert that when Virginia ceded the lands northwest of the river, it intended to establish the river's center as the line between Ohio and Kentucky, but, at the same time and thus inconsistently, to establish its northern edge as the line between Indiana and Kentucky. Rather, Ohio challenges the very postulate underlying the *Handly* decision, which must be taken, in practical effect, as establishing the entire northern boundary of Kentucky including its contact with Ohio. Ohio's new theory is that Virginia did not have title to the lands north of the Ohio River in 1784 when Virginia surrendered its claim to the United States. Virginia's claim, it is said, was baseless. Indeed, Ohio argues that title to these lands was hotly contested, with Virginia, New York, Massachusetts, Connecticut, and the United States all laying claim to the territory north of the river. The Continental Congress, fearing the threat this controversy posed for the youthful Nation, refused to resolve the disputed claims, and, instead, prevailed upon each of

the claimants to forgo its claim in favor of the United States for the common good. Accordingly, Ohio contends, the premise of *Handly*—that Virginia had title to the northwest territory prior to ceding it to the United States, or, to say it another way, that it was the common proprietor of lands on both sides of the river—is historically invalid.

We need intimate no view on the merits of Ohio's historical analysis, for the State's long acquiescence in the location of its southern border at the northern edge of the Ohio River, and its persistent failure to assert a claim to the northern half of the river, convince us that it may not raise the middle-of-the-river issue at this very late date. The 1820 decision in *Handly* necessarily placed Ohio on notice that any claim it might assert to half the river would be precluded by the reasoning of that opinion. The Court in *Handly* concluded that the entire border between Indiana and Kentucky was the river's northern edge. Virginia's claim to the territory that is now Indiana arose from the same source as its claim to what is now Ohio. The lands to which Virginia purportedly surrendered title to the United States in 1784 encompassed both Ohio and Indiana.[5] Ohio could not reasonably have believed, after *Handly,* that its claim over the northern half of the Ohio River rested on a footing different from that of Indiana.

---

[5] See *Indiana* v. *Kentucky,* 136 U. S. 479, 505 (1890). See also the deed of March 1, 1784, referred to in n. 2, *supra,* from Virginia to the United States. On August 7, 1789, Congress passed "An Act to provide for the Government of the Territory Northwest of the river Ohio." 1 Stat. 50. In 1800, this territory was divided into two separate governments. 2 Stat. 58. And on April 30, 1802, the enabling Act for the admission of Ohio was passed. 2 Stat. 173. The State was formed out of the eastern half of the theretofore divided territory and was "bounded . . . on the south by the Ohio river," *ibid.;* the land in the eastern division not included within the boundaries described for Ohio "is hereby attached to, and made a part of the Indiana territory." *Id.,* at 174.

Indeed, Ohio consistently has recognized that *Handly* and the cases that followed it foreclosed any claim that its border was located in the middle of the river. Even its original 1966 bill of complaint and supporting brief [6] in this case so state. The decisions of Ohio's highest court are to the same effect. And Ohio for over 150 years has failed to assert, through proceedings available in this Court, the claim it now would raise in the face of Kentucky's legislative [7] and judicial [8] assertions of sovereignty over the river.

Ohio does not say that its failure to assert its claim over the past century and a half is due to any excusable neglect. The implications of *Handly* and later decisions

---

[6] "The State of Ohio does now, and has always claimed and maintained that the boundary between it and the State of Kentucky is the *northerly low water mark* of the Ohio River, as that mark existed *in the year 1792* when Kentucky became a state." Brief in support of motion for leave to file complaint 8. (Emphasis in original.)

[7] In 1810, a decade before the *Handly* decision, the Kentucky Legislature enacted the following statute:

"Sec. 1 *Be it enacted by the General Assembly,* That each county of this commonwealth, calling for the river Ohio, as the boundary line, shall be considered as bounded in that particular by the state line on the north west side of said river, and the bed of the river and the islands, therefore shall be within the respective counties, holding the main land opposite thereto, within this state, and the several county tribunals, shall hold jurisdiction accordingly." Acts of Kentucky, 1809, p. 100 (1810); 1 Statute Laws of Kentucky 268 (1834).

See also 2 Ky. Rev. Stat., Tit. 1, c. 1, p. 2 (1971).

[8] *Commonwealth* v. *Henderson County,* 371 S. W. 2d 27, 29–30 (1963); *Louisville Sand & Gravel Co.* v. *Ralston,* 266 S. W. 2d 119, 121–122 (1954); *Shannon* v. *Streckfus Steamers, Inc.,* 279 Ky. 649, 653, 131 S. W. 2d 833, 835 (1939); *McFarland* v. *McKnight,* 45 Ky. 500, 510 (1846); *Church* v. *Chambers,* 3 Dana 274, 278–279 (Ct. App. Ky. 1335); *Fleming* v. *Kenney,* 27 Ky. 155, 158 (1830); *McFall* v. *Commonwealth,* 2 Metc. 394, 396 (Ky. 1859).

of this Court are too clear to support that claim. Ohio recognized this in its initial brief here.[9] Nor, in the light of the longstanding and unequivocal claims of Kentucky over the river, and Ohio's failure to oppose those claims, may Ohio credibly suggest that it has not acquiesced. "The rule, long-settled and never doubted by this court, is that long acquiescence by one state in the possession of territory by another and in the exercise of sovereignty and dominion over it is conclusive of the latter's title and rightful authority." *Michigan* v. *Wisconsin,* 270 U. S. 295, 308 (1926). To like effect are *Vermont* v. *New Hampshire,* 289 U. S. 593, 613 (1933); *Maryland* v. *West Virginia,* 217 U. S. 1, 42–44 (1910); *Louisiana* v. *Mississippi,* 202 U. S. 1, 53–54 (1906); *Virginia* v. *Tennessee,* 148 U. S. 503, 523 (1893); *Indiana* v. *Kentucky,* 136 U. S., at 509–510, 518; *Rhode Island* v. *Massachusetts,* 4 How. 591, 639 (1846).[10]

Here we have not only long acquiescence by Ohio in Kentucky's open claims over the river, but also lines of cases by this Court and the courts of both Ohio and Kentucky that, for more than 150 years, placed Ohio on consistent notice of the inadequacy of the claim it now asserts. We find ourselves in agreement with the Special Master that Ohio is foreclosed from claiming that its

---

[9] "Like Ohio, the State of Indiana was formed from the land ceded by Virginia; therefore, it has for its southern boundary the Ohio River. See 3 Stat. 289 (1816), and 3 Stat. 399 (1816). Thus, a determination of the boundary between the states of Indiana and Kentucky would control the determination of the boundary between the states of Ohio and Kentucky." Brief in support of motion for leave to file complaint 10.

[10] The situation, of course, is otherwise when the States' boundary dispute has been open, continuous and of long standing. See, for example, *New Jersey* v. *Delaware,* 291 U. S. 361, 376–377 (1934); *Oklahoma* v. *Texas,* 272 U. S. 21, 46–47 (1926); *Arkansas* v. *Tennessee,* 246 U. S. 158, 172 (1918).

boundary with Kentucky lies in the middle of the Ohio River.

The Special Master's recommendation is adopted and Ohio's motion for leave to amend its bill of complaint is denied. The case is remanded to the Special Master for further proceedings.

*It is so ordered.*

MR. JUSTICE DOUGLAS, dissenting.

The State of Ohio instituted this original action to locate the boundary between it and the Commonwealth of Kentucky on the Ohio River. The initial complaint recognized Kentucky's northern boundary as following "the low water mark on the northerly side of the Ohio River as it existed in the year 1792," [1] but asserted that subsequent events had altered the location of the low-water mark. Today the Court denies Ohio's request that it be permitted to amend its complaint to plead an alternative boundary theory: that the true boundary between the States is in the middle of the Ohio River. [2]

Basic concepts of pleading preclude determination of factual issues in testing the sufficiency of a claim. [3] The appropriate question for the Court at this stage of the proceedings, therefore, is whether if the facts as stated by Ohio are true, a valid legal issue is tendered. Ohio asserts that Virginia, Kentucky's predecessor in title, never held ownership rights to both banks of the Ohio River and that, accordingly, Kentucky's current claim to land underlying the northern side of the Ohio River is invalid. [4] The question before us is equivalent to that

---

[1] Complaint ¶ 6.

[2] Amended complaint ¶¶ 1–3.

[3] F. James, Civil Procedure § 4.1, p. 127; *Conley v. Gibson*, 355 U. S. 41, 45–46.

[4] Virginia's claim of title rests upon the charter granted by King James I to the London Company in 1609. Ohio argues that later

posed by a demurrer. The majority's conclusion of insufficiency is, therefore, not sustainable.

The Court's decision is a determination upon the merits of Ohio's proffered allegations and should be made only after all the evidence is before it. The Master concludes, and the Court agrees, that Ohio has acquiesced to Kentucky's ownership of the northern half of the Ohio River as established by adjudications in this Court. Although I find such consideration of the merits to be premature, the Court's reasoning prompts me to review the case law upon which estoppel is urged.

The Ohio River serves as the boundary between the States of Kentucky and Indiana as well as the boundary between the parties to this suit, Kentucky and Ohio. During the 19th century, this Court dealt with the nature of the Kentucky-Indiana boundary in two cases. *Handly's Lessee* v. *Anthony,* 5 Wheat. 374 (1820), and *Indiana* v. *Kentucky,* 136 U. S. 479 (1890). Later cases dealt with issues that turned upon the boundary de-

---

events, including the revocation of the charter in 1624 when Virginia became a Crown colony, 1 J. Marshall, The Life of George Washington 69; 2 W. Hening's Stat. at Large 525–526; 1 Laws of the United States 465 (B. & D. ed. 1815) (hereinafter Laws), and the ceding by the French to the British of the Eastern Mississippi Valley north of the Ohio River under the Treaty of Paris in 1763, 1 Laws 441–442; A. Shortt & A. Doughty, Documents Relating to the Constitutional History of Canada, 1759–1791, pp. 113, 116, sharply curtailed Virginia's reach and that the middle of the river was intended as the boundary between old and new States by the United States following the Revolution. It seeks to substantiate this final point by references to various laws that prescribe the boundaries of new States, 1 Laws 475, 480, provide for navigational rights, *id.,* at 479–480, and speak in general terms of Virginia, Kentucky, and Tennessee as the lands south, or south and east, of the Ohio River, and of Ohio, Indiana, and Illinois as the lands to the north, or the north and west, 2 Laws 14, 104, 138, 179, 311, 421, 533; 3 Laws 367, 385, 396, 596, 612.

termination of *Handly's Lessee*.[5] Based upon a historical analysis that Ohio here contests, the Court held in the *Handly* case that the Kentucky-Indiana boundary coincides with the northern low-water mark of the Ohio River.[6] Ohio, of course, was not involved in that litigation. Yet, the Master's recommendation that is now adopted would bind Ohio today to a determination made in 1820 in a case to which it was not a party. And, since the doctrine of *res judicata* does not reach so far, reliance is placed upon an estoppel theory. Simply stated, Kentucky contends that Ohio has lost whatever rights it may once have had to challenge the Kentucky claim to land underlying the northern half of the Ohio River by failing to object earlier and by recognizing the boundary rationale that was applied to Indiana in cases tried in Ohio courts since 1820. Ohio disputes the suggestion.

First, Ohio notes that the argument it wishes to present to substantiate a claim to the center of the river has not been considered by this Court. The early cases turned instead on the assumption that Virginia's prior title, upon which Kentucky's claims are predicated, was valid as to the land involved.[7] Ohio additionally points out that the three Ohio cases proffered as evidence of Ohio's recognition of Kentucky's claim to the northern half of the river [8] concerned private disputes that hinged upon location of the river's edge, rather than a determination as to the boundary between the States. That the further determination was not required is

---

[5] *Henderson Bridge Co.* v. *Henderson City*, 173 U. S. 592 (1899); *Wedding* v. *Meyler*, 192 U. S. 573 (1904); *Nicoulin* v. *O'Brien*, 248 U. S. 113 (1918).

[6] *Handly's Lessee* v. *Anthony*, 5 Wheat. 374, 377, 379.

[7] See *ibid.; Indiana* v. *Kentucky*, 136 U. S. 479, 503–504.

[8] *Lessee of McCullock* v. *Aten*, 2 Ohio 307 (1826); *Lessee of Blanchard* v. *Porter*, 11 Ohio 138 (1841); *Booth* v. *Shepherd*, 8 Ohio St. 243 (1858).

made clear by the language of those cases.[9] The most recent of the three, indeed, states quite explicitly:

> "It does not become necessary, in this case, to determine whether the middle of the Ohio River . . . does or does not constitute the boundary line between the states of Virginia and Ohio. For all the purposes of this case, it may be assumed that Virginia was the original, undisputed owner of the territory on both sides of the river, and still retains all that she did not part with by her deed of cession in 1784." [10]

Ohio now wishes to question precisely that assumption. In prematurely judging the issues and pretermitting briefing and argument of Ohio's attack on the validity of Virginia's title, the Court does disservice both to the adjudication of this dispute and to the procedural contours of original actions. I would allow Ohio to amend its complaint so that the merits might be reached in due course.

---

[9] 2 Ohio, at 310 (discussing only ownership of the land above the water line but below the bank); 11 Ohio, at 139–140 ("The defendant's deed conveys the soil *to the top* of the river bank, and reserves the 'break and slope,' between that point and the river").

[10] 8 Ohio St., at 245–246 (noting that "In the case of *Handly's Lessee* v. *Anthony*, the supreme court of the United States, proceed[ed] on the *assumption* that Virginia was the original proprietor of both sides of the river . . ." (emphasis added)).