## CITY OF CINCINNATI

v.

## DRYDEN.

Hamilton County Municipal Court.

No. 98–TRD–018014.

Decided June 2, 1998.

*Lisa C. Allen,* Assistant City Prosecutor, for plaintiff.

*John D. Dryden, pro se.*

DAVID C. STOCKDALE, Judge.

This matter is before the court on the defendant's motion to dismiss for lack of jurisdiction. The essential facts have been either stipulated by the parties or judicially noticed by the court.

On April 15, 1998, the defendant, John D. Dryden, was operating a motor vehicle north on Interstate 75 crossing the Ohio River on the Brent Spence Memorial Bridge. At a point on the bridge midway between the Kentucky shoreline and the Ohio shoreline, the defendant struck the rear of the vehicle traveling in front of him. The Cincinnati police were summoned and the defendant was charged with violating Section 506-8 of the Cincinnati Municipal Code, which provides that "no person shall drive any motor vehicle in or upon any street or highway at a greater speed than will permit the operator to bring it to a stop within the assured clear distance ahead." The defendant moves the court to dismiss the charge for lack of jurisdiction because the operation of the vehicle and the collision occurred entirely within the boundaries of the commonwealth of Kentucky.

The boundary line between the state of Ohio and the commonwealth of Kentucky was determined by the Supreme Court in *Ohio v. Kentucky* (1980), 444 U.S. 335, 100 S.Ct. 588, 62 L.Ed.2d 530, to be the "low-water mark on the northerly side of the Ohio River as it existed in 1792 when Kentucky was admitted to the Union." The location of the low-water mark of 1792 was thereafter geodetically determined and a description of the line was reported by the court's Special Master and adopted by the court in a decree entered April 15, 1985. *Ohio v. Kentucky* (1985), 471 U.S. 153, 105 S.Ct. 2011, 85 L.Ed.2d 119. It is agreed by the parties that the defendant's operation of the vehicle and the collision occurred south of this line of demarcation.

■ The Supreme Court's decree also states at paragraph 4 that "[t]he State of Ohio and the Commonwealth of Kentucky each have concurrent jurisdiction over the Ohio River." [1] This decree raises the question whether the concurrent

---

1. The concurrent jurisdiction of Ohio and Kentucky over the Ohio River is not something that was newly created by the Supreme Court in 1980, but is a situation which predates the Republic. As recounted in *Benham v. Indiana* (1993), 622 N.E.2d 982, "[i]n 1784, Virginia released to the United States its territory northwest of the Ohio River [Deed of Cession from Virginia, 1784 Va. Acts (11 Hen.) 571] and subsequently ratified federal plans to divide that territory into states. [1788 Va. Acts (12 Hen.) 780.] In 1789, Virginia discarded the territory which now forms Kentucky, and provided that Virginia and Kentucky would enjoy concurrent jurisdiction over the Ohio River with the states or territories on the northwest shore. [1789 Va. Acts (13 Hen.) 17, 19–20.] The federal government subsequently ratified this Virginia Compact. [1 Stat. 189 (1791).]" See, *e.g.*, *Ohio v. Stevens* (C.P.1844), 2 West. L.J. 66, 1 Ohio Dec.Rep. 82, reversed on other grounds, *Stephens v. Ohio* (1846), 14 Ohio 386; *Ohio v. Savors* (1911), 15 Ohio C.C. (N.S.) 65, 23 Ohio C.D. 224.

jurisdiction encompasses only the river itself, or whether it encompasses all of the space between the shorelines, regardless of elevation. To resolve this question, we can turn to an earlier decision by the court in the same case, *Ohio v. Kentucky* (1973), 410 U.S. 641, 93 S.Ct. 1178, 35 L.Ed.2d 560. In ruling on a motion by the state of Ohio for leave to file an amended bill of complaint, the court noted that Ohio's original prayer for relief asked that the court declare and establish that "the State of Ohio and the State of Kentucky have equal and concurrent jurisdiction over and on all of the Ohio River from the northerly shore to the southerly shore, except jurisdiction incidental to the sovereignty of the soil under the river and structures permanently attached thereto." *Id.* at 642, 93 S.Ct. at 1179, 35 L.Ed.2d at 563. There is nothing in any of the court's decisions in that case to indicate that the court's declaration of concurrent jurisdiction is intended to be broader than originally claimed by Ohio. Thus we interpret the court's decree that each state has concurrent jurisdiction as referring only to the body of water flowing between Ohio and Kentucky and not to the riverbed or to anything permanently affixed to the riverbed or to either shore.[2]

While the state of Ohio has had jurisdiction over the Ohio River for many years, the Hamilton County Municipal Court, being a statutory court with no jurisdiction beyond that granted by statute, did not acquire such jurisdiction until 1992 with the adoption of R.C. 1901.027. See *State v. Gerling* (1991), 76 Ohio App.3d 576, 602 N.E.2d 734. R.C. 1901.027 provides that this court and other municipal courts along the Ohio River have "jurisdiction beyond the north or northwest shore of the Ohio river extending to the opposite shore line, between the extended boundary lines of any adjacent municipal courts or adjacent county courts. Each of the municipal courts that is given jurisdiction on the Ohio river by this section has concurrent jurisdiction on the Ohio river with any adjacent municipal courts or adjacent county courts that border on that river and with any court of Kentucky or of West Virginia that borders on the Ohio river and that has jurisdiction on the Ohio river under the law of Kentucky or the law of West Virginia, whichever is applicable, or under federal law."

The issue now before the court is whether we have criminal jurisdiction over activities occurring on a bridge over the Ohio River but wholly south of the

---

2. Accord *Bellaire ex rel. Sedgwick v. Bellaire, B. & W. Ferry Co.* (1920), 13 Ohio App. 356, 358–359, affirmed (1922), 105 Ohio St. 247, 136 N.E. 899 ("such concurrent jurisdiction as the states have over the Ohio river is over the waters of the river, as they extend from shore to shore, and does not operate beyond the shore. * * * It is held to relate to things on the water and not to attach to the soil or extend beyond the boundary lines of the state."). The court will take judicial notice that the Brent Spence Memorial Bridge is not a pontoon bridge but is permanently anchored in the soil.

boundary line between Ohio and Kentucky.[3]   In examining R.C. 1901.027, we find that the language used by the General Assembly is consistent with our interpretation of the Supreme Court's declaration of concurrent jurisdiction and with prior case law.[4]   While the first sentence of the statute, if viewed in isolation, might be read to grant jurisdiction generally over everything between the Ohio shore and the Kentucky shore, it is qualified by the second sentence.   The second sentence twice describes the jurisdictional grant given in the first sentence as a grant of jurisdiction "on" the Ohio River.   The clear intention of the legislature is that this court's concurrent jurisdiction is only over the body of water flowing between the two shores.   This court has jurisdiction over activities occurring on the Brent Spence Memorial Bridge or one of the other bridges permanently spanning the Ohio River only when those activities occur north of the boundary line declared by the Supreme Court and within Hamilton County.

Inasmuch as the activities giving rise to this charge all occurred on that portion of the bridge south of the state boundary, the court finds that it lacks jurisdiction to hear this case.   The defendant's motion to dismiss is therefore granted, and this cause is dismissed.

*Cause dismissed.*

---

**3.**   While the defendant's motion is to dismiss upon jurisdictional grounds, the facts also present the issue whether the Cincinnati ordinance under which the defendant was charged is of any force or effect where the activity giving rise to the charge occurred.   It is axiomatic that the ordinances adopted by a municipality have no extraterritorial effect unless the General Assembly gives them such an effect.   *Prudential Co-op. Realty v. Youngstown* (1928), 118 Ohio St. 204, 160 N.E. 695.   The court can take judicial notice that the city of Cincinnati is an incorporated municipality of the state of Ohio and that its boundaries do not extend beyond the boundaries of the state of Ohio. There is no statute that makes Cincinnati criminal or traffic ordinances effective beyond the city limits.   However, it has been held that the city of Cincinnati can enforce its ordinances on the Ohio River below the low-water mark by virtue of the state's concurrent jurisdiction.   *Dickow v. Cincinnati* (C.P.1920), 31 Ohio Dec. 266, 23 Ohio N.P.(N.S.) 1. Given our decision today, we need not decide this issue.

**4.**   See note 2, *supra.*