215 N.J. Super. 426 (1986)
521 A.2d 1362
FRANK J. GUARINI, MEMBER OF THE HOUSE OF REPRESENTATIVES, ET AL., PLAINTIFFS,
v.
THE STATE OF NEW YORK AND THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Hudson County.
Decided March 18, 1986.
*429 Seymour Margulies, for plaintiffs (Clifford Herrington, of counsel).
Jeffrey P. Clemente, New Jersey counsel, Judith T. Kramer, Assistant Attorney General and Ellen Fried, Assistant Attorney General, for defendant State of New York (Robert Abrams, Attorney General of the State of New York, attorney).
Dorothy Donnelly, Deputy Attorney General, for defendant State of New Jersey (W. Cary Edwards, Attorney General of the State of New Jersey, attorney).
HUMPHREYS, A.J.S.C.
The controversy in this case centers around the Statue of Liberty and the rights and interests of the States of New Jersey and New York to the statue and the land on which the statue rests.[1]
The Statue of Liberty is one of America's most treasured possessions. Its timeless message of hope and promise has found fulfillment in the lives of millions of immigrants and their descendants. The statue is truly an eternal symbol of the essence of America. The statue lies on an island in the Hudson River, the border between New Jersey and New York. The island and an adjoining island are on the New Jersey side of the river; however, the State of New York pursuant to an interstate compact with New Jersey has exercised jurisdiction over the two islands and the statue for at least 150 years.
Plaintiffs are public officials and prominent citizens who are residents of New Jersey. They contend that since the islands are located in the New Jersey portion of the Hudson River, this court should declare that the islands and the statue are under the jurisdiction and sovereignty of New Jersey.
The State of New York moves to dismiss this action asserting various defenses, the most significant of which are: (1) lack of *430 jurisdiction in this court; (2) sovereign immunity of New York from suit; (3) the doctrine of comity between states; and (4) plaintiffs' lack of standing.
Plaintiffs cross-move for partial summary judgment.
The court, after a careful examination of the facts and the legal authorities concludes that New York's defenses are valid and bar this action.

I.

JURISDICTION.
In 1833 New Jersey and New York entered into an interstate compact concerning the Hudson River. The compact was approved by the United States Congress in 1834 and, therefore, became binding upon New Jersey and New York. Poole v. Fleeger, 36 U.S.(11 Pet.) 184, 9 L.Ed. 680 (1937).
Under the terms of the compact the boundary between New Jersey and New York is established, with some exceptions, as the middle of the Hudson River. The two islands in question are in the New Jersey half of the river and, therefore, within the territory of New Jersey. The compact, however, expressly provides that New York will retain "present jurisdiction" over the islands, and New York has continued to exercise that jurisdiction to the present day.
Plaintiffs contend that this court should declare the compact void and ultra vires, or should modify the compact so as to give New Jersey jurisdiction over the islands and the statue. Plaintiffs also allege that the islands have been enlarged through accretion of soil and that this additional area should be administered by New Jersey. Plaintiffs in their cross-motion for partial summary judgment seek a declaration by this court that the islands are "a part of the sovereign territory of New Jersey."
Viewed precisely, this case involves either (1) a border dispute; or (2) an abrogation or modification of an interstate *431 compact; or (3) a declaration of the rights of the party states under that compact. In all of these instances, this court lacks jurisdiction.
If this case is viewed as a border dispute between states, then the proper forum is the United States Supreme Court. Congress has provided that the United States Supreme Court "shall have original and exclusive jurisdiction of (1) all controversies between two or more states." 28 U.S.C.A. § 1251(a). See also U.S. Const., Art. III, § 2, and Ohio v. Kentucky, 410 U.S. 641, 644, 93 S.Ct. 1178, 1180, 35 L.Ed.2d 560 (1973).
Notwithstanding the above statutory language of "exclusive jurisdiction," the United States Supreme Court has deferred to other forums in "appropriate" cases, i.e., "where there is jurisdiction over the named parties, where the issues tendered may be litigated and where appropriate relief may be had." Illinois v. Milwaukee, 406 U.S. 91, 93, 92 S.Ct. 1385, 1388, 31 L.Ed.2d 712 (1972); Maryland v. Louisiana, 451 U.S. 725, 739, 101 S.Ct. 2114, 2125, 68 L.Ed.2d 576 (1981), and Texas v. New Mexico, 462 U.S. 554, 570, 103 S.Ct. 2558, 2568, 77 L.Ed.2d 1 (1983). Under those criteria, this case and this forum are plainly not "appropriate." On the contrary, the issues here present a classic case for the exercise of original and exclusive jurisdiction by the United States Supreme Court. The issues do not arise in the context of a suit by private parties over private property, in which the forum might appropriately be a state court. See Durfee v. Duke, 375 U.S. 106, 115-116, 84 S.Ct. 242, 247-248, 11 L.Ed.2d 186 (1963). The United States is not a party and, therefore, the discretionary jurisdictional language of paragraph (b) of the code is not implicated. See 28 U.S.C.A. § 1251(b). Here we deal with a dispute over state boundaries, over an interstate compact, over jurisdiction and sovereignty under that compact. Such an action patently lies only in the United States Supreme Court, not in the state court of one of the states involved.
*432 Fundamental principles of law preclude state boundaries from being affected by suits brought by individuals. Suits between private parties as to their interests in land cannot bind the states "with respect to any controversy they might have, now or in the future, as to the location of the boundaries between them, or as to their respective sovereignty over the land in question." Durfee v. Duke, supra at 115, 84 S.Ct. at 247.
No court, and certainly no state court, has the power to abrogate or modify interstate compacts approved by Congress. See Texas v. New Mexico, supra 462 U.S. at 564, 103 S.Ct. at 2565. No state court has the authority to declare the rights and interests of states over disputed territory especially when the dispute has apparently been resolved by an interstate compact. On the contrary, the cases suggest that it is only the United States Supreme Court that has that authority. In Texas v. New Mexico, the Court pointed out that the authority of the United States Supreme Court to resolve controversies between two states "extends to a suit by one state to enforce its compact with another state or to declare rights under a compact ... If there is a compact, it is a law of the United States ... and our first and last order of business is interpreting the compact." Id. at 567, 103 S.Ct. at 2567. See also Durfee v. Duke, supra 375 U.S. at 110, 84 S.Ct. at 244.
Plaintiffs cannot, therefore, through the medium of a lawsuit in a state court oust or curtail another state's exercise of jurisdiction over land, particularly when that jurisdiction is being exercised pursuant to the express terms of an interstate compact, a "law of the United States." This can be done, if at all, only through an action filed in the United States Supreme Court by a state which is a party to the compact. See Ohio v. Kentucky, supra 410 U.S. at 648, 93 S.Ct. at 1182; Texas v. New Mexico, supra 462 U.S. at 570, 103 S.Ct. at 2568.

*433 II.

SOVEREIGN IMMUNITY.
Plaintiffs assert that the doctrine of sovereign immunity has had its day and should not be applied here. The immunity of the sovereign from suit springs from the inability at common law to sue the king in his own court without his consent. The king was at the zenith of the feudal hierarchy. He was not subject to suit elsewhere since there was no court higher than his own. See F. Pollock & F. Maitland, History of English Law (2 ed. 1899), 518. Much misconstrued is the phrase "A king can do no wrong." As the Magna Carta shows, a king is capable of and may, indeed, tend toward doing wrong. See also Shakespeare, King Richard the 3rd.
Procedures were, therefore, developed in England to redress the king's wrong and to secure a government under law. This was frequently done by the petition of right which the king could not rightfully refuse. See Crosswhite, "Comity Bows To Wall Street: Ehrlich-Bober v. University of Houston," 14 Conn.L.Rev. 369, 373 n. 27 (1983). In practice, "the king often endorsed on such petitions let justice be done" which empowered the courts to proceed. Case Comment, "Eleventh Amendment Does Not Preclude Suit Against One State In the Courts of A Sister State: Nevada v. Hall," 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979), 58 Wash. U.L.Q. 481, 482 (1980).
Notwithstanding these modifications in England, the doctrine of sovereign immunity took firm root in this country, and the states of this union have applied the doctrine in various contexts. However, even in the United States, sovereign immunity has probably never been applied in its "literal breadth." East Orange v. Palmer, 47 N.J. 307, 328 (1966). Moreover, in recent years it has lost some force. See Willis v. Dept. of Cons. & Ec. Dev., 55 N.J. 534 (1970); P.T. & L. Construction Co. v. Comm'r. Dept. of Trans., 55 N.J. 341 (1970).
*434 Nevertheless, both New York and New Jersey generally retain the doctrine. See The New Jersey Torts Claims Act at N.J.S.A. 59:1-1 et seq. and N.J.S.A. 59:2. The purpose of the New Jersey statute is to "re-establish" sovereign immunity. English v. Newark Housing Authority, 138 N.J. Super. 425, 428 (App.Div. 1976). See Glen v. Rockefeller, 61 Misc.2d 942, 307 N.Y.S.2d 46 (Sup.Ct. 1970), aff'd 313 N.Y.S.2d 938 (App.Div. 1970). Compare Cass v. State, 58 N.Y.2d 460, 461 N.Y.S.2d 1001, 448 N.E.2d 786 (Ct.App. 1983).
Plaintiffs do not claim that this is a case in which sovereign immunity has been specifically waived by legislation. Moreover, plaintiffs do not dispute that a state may assert its sovereign immunity in its own courts. Plaintiffs' position is that the United States Supreme Court in Nevada v. Hall, supra, determined that a state may not assert its sovereign immunity in the courts of another state. In that case plaintiff was a California resident. He instituted suit in California to recover for a severe injury sustained in an automobile accident in California. Defendant was an employee of a Nevada state entity which owned the car which struck plaintiff. Nevada asserted sovereign immunity as a defense to the California suit. The California courts held in favor of plaintiff resulting in judgment for plaintiff in excess of one million dollars.
The United States Supreme Court held that under the circumstances there, Nevada's sovereign immunity did not protect it from suit in a California state court. The Court's rationale was based on the theory that the Federal Constitution did not prevent California from permitting a suit against another state to be brought in the California courts.
The Court in Nevada v. Hall, supra, recognized that its ruling did not mean that a state could be sued in another state as a matter of course. The Court said:
California's exercise of jurisdiction in this case poses no substantial threat to our constitutional system of cooperative federalism. Suits involving traffic accidents occurring outside of Nevada could hardly interfere with Nevada's capacity to fulfill its own sovereign responsibilities. We have no occasion, in *435 this case, to consider whether different state policies, either of California or of Nevada, might require a different analysis or a different result. [440 U.S. at 424, n. 24, 99 S.Ct. at 1190, n. 24]
The present case clearly requires a "different analysis" and a "different result." Plaintiffs in this case have no property rights or interests in the islands or in the statue. Their personal rights are indistinguishable from those of other New Jersey residents. Plaintiffs are challenging in a suit in New Jersey the authority of New York State over land bordering the two states. Plaintiffs, if successful, would clearly interfere with New York's capacity to fulfill its own sovereign responsibility over those two islands in accordance with and as granted by the 1833 compact. Exercise of jurisdiction by this court would thereby pose a "substantial threat to our constitutional system of cooperative federalism." Ibid.
Moreover, if this suit were allowed to stand, Pandora's box would surely be opened. The escaping furies would spawn a cascade of law suits as citizens challenged the governmental authority of neighboring states over lands on their borders. New Jersey borders three states and is no stranger to boundary disputes. See New Jersey v. Delaware, 291 U.S. 361, 54 S.Ct. 407, 78 L.Ed. 847 (1934); Central R.R. Co. v. Jersey City, 209 U.S. 473, 28 S.Ct. 592, 52 L.Ed. 896 (1908). Suits almost without number would likely be brought in New Jersey by its citizens, as well as by Pennsylvania, Delaware and New York citizens in their state courts. The governments of those states would find themselves unwillingly embroiled in a plethora of litigation over boundary and jurisdictional issues, many of which could and should be resolved by the states through negotiation not litigation.
Furthermore, allowing this suit is out of step with the history of our nation, as well as basic tenets of our federal system. Our founding fathers were opposed to permitting citizens from one state to sue another state. See Nevada v. Hall, supra 440 U.S. at 435-436, 99 S.Ct. at 1195-1196 (Rehnquist, J. dissenting).
*436 In 1793, the United States Supreme Court permitted such a suit in Chisholm v. Georgia, 2 Dall. 419, 1 L.Ed. 440 (1793). That decision was promptly overturned by the adoption of the Eleventh Amendment. That amendment by its terms deprives only the federal courts of jurisdiction over cases in which citizens of one state sue another state. However, "the States that ratified the Eleventh Amendment thought that they were putting an end to the possibility of individual states as unconsenting defendants in foreign jurisdictions." Nevada v. Hall, supra 440 U.S. at 437, 99 S.Ct. at 1196 (Rehnquist, J., dissenting). It would make no sense for the states to foreclose "the neutral federal forums only to be left to defend suits in the courts of other States." Ibid.
The majority in Nevada v. Hall, supra, may have opened the door somewhat to suits against a state by residents of another state in the courts of that latter state. Plaintiffs, however, would fling the door wide open. Even the majority in Nevada v. Hall would not sanction such an expansion, especially where at issue is the governmental authority of the state being sued. Ibid.
Plaintiffs contend that sovereign immunity does not apply to activities of New York which take place in New Jersey territory. That argument, however, is unsupported by persuasive authority. This is not an in rem or quasi in rem action in which plaintiffs are asserting property rights in real or personal property located in New Jersey. New York's "activities" in New Jersey in this case are not as a trespasser or interloper. New York is acting pursuant to the express terms of an interstate compact, which is the equivalent of a law of the United States. See Texas v. New Mexico, supra 462 U.S. at 567, 103 S.Ct. at 2566. Any challenge to New York's authority to so act requires a declaration of rights under the compact. Such a declaration must be sought in the United States Supreme Court. See Ohio v. Kentucky, supra; Texas v. *437 New Mexico, supra at 554, 103 S.Ct. at 2558, and point I of this opinion.
Plaintiffs also contend that New York will not in its own courts recognize sovereign immunity for another state; hence, New Jersey should do the same. Plaintiffs rely on the case of Ehrlich-Bober & Co., Inc. v. University of Houston, 49 N.Y.2d 574, 427 N.Y.S.2d 604, 404 N.E.2d 726, (Ct.App. 1980). In that case a New York company had commercial dealings with the University of Houston, an entity of the State of Texas. The New York company instituted suit against the University of Houston in the New York courts. The New York Court of Appeals held that New York's public policy required the New York courts to permit suits by New York companies in New York courts against other states or other state entities in cases arising out of "a wholly commercial transaction centered in New York." Id. at 582, 427 N.Y.S.2d 604, 404 N.E.2d 726.
Here, however, we are dealing with a governmental function, not a commercial transaction. Moreover, New Jersey's public policy does not require this suit to be brought. See point III of this opinion.
Turn this case around. Nothing in Ehrlich-Bober, supra indicates that New York would permit in its courts a suit by New York citizens challenging New Jersey's long-standing governmental authority over territory in New York, when New Jersey had been exercising that authority for more than a century pursuant to an interstate compact to which New York was a party. In fact, a contrary conclusion was reached in the case of The People v. The Central R.R. Co. of New Jersey, 42 N.Y. 283 (1870). In that case the New York court found that New Jersey had jurisdiction over certain piers, wharfs, docks and other improvements in the Hudson River pursuant to the 1833 compact. The court said that under those circumstances the New York courts did not have and should not take jurisdiction with respect to those improvements. The court said that the exercise of such jurisdiction by New York would be "entirely *438 untenable and in conflict with the fundamental principle of law and justice, that no party shall be a judge in his own cause." Id. at 305. That holding and language is squarely applicable here.
This action is barred by the doctrine of sovereign immunity. Residents of New Jersey are attempting here to challenge the governmental authority of New York over territory which by interstate compact is under New York's jurisdiction. Permitting this suit would violate principles of cooperative federalism and interfere with New York's exercise of sovereign responsibilities pursuant to that interstate compact. Nevada v. Hall, supra 440 U.S. at 424, n. 24, 99 S.Ct. at 1190, n. 24; see also id. at 432, 99 S.Ct. at 1194 (Rehnquist, J., dissenting); id. at 427, 99 S.Ct. at 1191 (Blackmun, J., dissenting).

III.

COMITY.
The majority of the United States Supreme Court in Nevada v. Hall, supra, concluded that the United States Constitution would not bar all suits against states instituted by the citizens of another state in the courts of that latter state. The Court in Nevada v. Hall, however, did not rule on whether in a given case a state court could or should decline to entertain the suit on the ground of comity.
The doctrine of comity has been described as:
... neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws. [Hilton v. Guyot, 159 U.S. 113, 163-164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895)]
Chief Justice Taney of the United States Supreme Court stated in Bank of Augusta v. Earle, 38 U.S. (13 Pet.) 517, 590, 10 L.Ed. 274 (1839), that there should be a greater degree of comity among the states than among foreign nations. The *439 states, the Chief Justice said, are "members of the same great political family" and have "deep and vital interests" which bind them "so closely together."
Our New Jersey Supreme Court has stated that:
... comity is not a binding obligation on the forum state, but a courtesy voluntarily extended to another state for reasons of `practice, convenience and expediency ... Deference is not offered, however, when it would contravene the public or judicial policy of the forum state. Thus, application of comity involves an examination by the Court of both the public policy of the forum state and the impact on that policy of enforcing the foreign proceeding. [Philadelphia v. Austin, 86 N.J. 55, 64 (1981)]
Plaintiffs contend that comity should not be applied here. They again rely on Ehrlich-Bober, supra. That case, as previously stated, involved a "wholly commercial transaction" centered in New York. It was for that reason that the majority declined to permit the assertion of "governmental immunity as a matter of comity." Ehrlich-Bober is not applicable since this case does not involve a commercial transaction. On the contrary, the question here "goes to the very heart of the governmental function" and, therefore, the doctrine of comity requires dismissal. See Ehrlich-Bober, supra 49 N.Y.2d at 580-581, 427 N.Y.S.2d 604, 404 N.E.2d 726 in which the Court implied that comity should bar the action when the question at issue goes to the very heart of the governmental function.
The "public" or "judicial policy" of New Jersey would not be "contravened" by declining to hear this suit. See Philadelphia v. Austin, supra 86 N.J. at 64. The State of New Jersey has made no such argument to this court. On the contrary, New Jersey in its answer demanded the dismissal of this action and asserted various defenses to the suit as follows:
First Defense. Complaint raises a boundary dispute and a dispute as to the respective sovereignty of Defendants, the State of New York and State of New Jersey, and jurisdiction properly lies in the United States Supreme Court;
Second Defense. The complaint failed to state a cause of action upon which relief may be granted;
Third Defense. This action is barred by the 11th Amendment of the United States Constitution;

*440 Fourth Defense. Plaintiffs lack standing to raise the issues specified in their complaint.
Moreover, New Jersey in its answer "demands judgment dismissing the complaint together with costs of suit and such other relief as the Court deems just and proper."
New Jersey has not amended its answer. Hence, the answer stands as an expression of New Jersey's formal position in this lawsuit.
In a letter brief, New Jersey attempts to shift position. New Jersey contends in that brief that the motion of New York for dismissal should be denied "since jurisdiction of the res of the dispute lies within the State of New Jersey." However, New Jersey also states in its brief that it takes no position on the issue of New York's sovereign immunity, nor does New Jersey abandon a separate defense of United States Supreme Court jurisdiction.
New Jersey states further in its brief (but not in any pleading or motion), that summary judgment should be granted "declaring New Jersey sovereign over the islands." New Jersey argues that the word "jurisdiction" in the 1833 compact should be narrowly construed so as to refer only to the right to exercise legal process on the islands.
New Jersey's position was not clarified by oral argument. As best as can be gleaned, New Jersey's position is that it does not seriously object to dismissal of this suit, but if the suit is not dismissed, then New Jersey wishes to assert whatever legal rights or remedies it may have.
In any event, the court concludes that the State of New Jersey would not view the dismissal of this action on the ground of comity as "contravening" the "public" or "judicial policy" of New Jersey. Apparently the States of New Jersey and New York are proceeding by discussion and accommodation to resolve any differences they may have. That process is clearly preferable to litigation.
*441 As the United States Supreme Court said in Texas v. New Mexico:
Time and again we have counseled States engaged in litigation with one another before this Court that their dispute `is one more likely to be wisely solved by cooperative study and by conference and mutual concession on the part of the representatives of the states which are vitally interested than by proceedings in any court however constituted.'
[462 U.S. at 575, 103 S.Ct. at 2571]
This court concludes that permitting this action would clearly violate fundamental principles of comity between states which are fundamental to our federal system. The 50 united states are parts of a great union. Disputes between the states over territory and the exercise of governmental authority over that territory should be heard in the supreme judicial body of that great union, the United States Supreme Court. Hearing such disputes in the courts of one of the states involved would give the appearance, if not the fact, of blatant partisanship.
The doctrine of comity between the states of the United States is rooted in the basic federal principle that the states of this federal union must strive to accommodate their diverse concerns and work together to foster their common interests. Contests in state courts over territory and jurisdiction over that territory would produce discord and ill feeling, not comity and amity. Upholding suits of this kind would result in a multitude of cacophonous litigation. Citizens of various states would seek to vindicate in their state courts their perception of the territorial rights or wrongs of their states vis-a-vis neighboring states. The resulting chaos and confusion would serve no one's best interests.
This case is an excellent example of the need for and the wisdom of the doctrine of comity.

IV.

STANDING.
Plaintiffs assert that they have standing to sue under the liberal standing rules in New Jersey. The New Jersey Supreme *442 Court has held that "in cases of great public interest, any `slight additional private interest' will be sufficient to afford standing." Salorio v. Glaser, 82 N.J. 482, 491 (1980).
Plaintiffs contend this is a case of "great public interest" and that they meet the requirements of a "slight additional private interest." As to the private interest, one plantiff purchased items on one of the islands and paid $1.35 sales tax to New York. Two plaintiffs contend that they have a private interest based on the potential award of labor contracts to New Jersey labor unions rather than New York labor unions, if New York is ousted from jurisdiction over the islands.
Plaintiffs "private interests" are of gossamer texture. Moreover, their interests do not impinge on the major issue in this case, whether this court can and should declare that New York may not exercise governmental authority over the islands and the statue pursuant to the interstate compact. As to that vital issue, plaintiffs' interests are no more or less than any citizen of the United States, since the Statue of Liberty belongs to all of us.
Plaintiffs are challenging New York's right to exercise governmental authority over certain territory. However, the right to fix and determine boundaries and to exercise governmental authority over that territory are basic attributes of sovereignty. Justice Story said nearly 150 years ago in Poole v. Fleeger:
It cannot be doubted, that it is a part of the general right of sovereignty, belonging to independent nations, to establish and fix the disputed boundaries between their respective territories; and the boundaries, so established and fixed by compact between nations, become conclusive upon all the subjects and citizens thereof, and bind their rights, and are to be treated, to all intents and purposes, as the true and real boundaries. This is a doctrine universally recognized in the law and practice of nations. It is a right equally belonging to the states of this Union, unless it has been surrendered under the constitution of the United States. So far from there being any pretense of such a general surrender of the right, it is expressly recognized by the constitution, and guarded in its exercise by a single limitation or restriction, requiring the consent of the congress. The constitution declares, that `no state shall, without the consent of congress, enter into any agreement or compact with another state;' thus plainly admitting that with such consent, it might be done; and in the present instance, that consent has been expressly given. The compact, *443 then, has full validity, and all the terms and conditions of it must be equally obligatory upon the citizens of both states.
[38 U.S. at 209]
See Also Hinderlider v. La Plata Co., 304 U.S. 92, 106, 58 S.Ct. 803, 809, 82 L.Ed. 1202 (1937) (Brandeis, J.).
The compact here was entered into as a part of the general right of sovereignty, the right to govern. It is binding and conclusive on the states and on "the citizens of both states." Hinderlider v. La Plata Co., supra at 104, 58 S.Ct. at 808. See also Poole v. Fleeger, supra 58 U.S. at 209. Individual citizens simply do not have standing to have determined by a court those matters reserved to sovereign governments.
Our courts treasure the legal rights of all of our citizens and guard zealously access to the courts to secure those rights. To that end, the courts in New Jersey have permitted citizens to bring actions in a great variety of matters, even though the citizens' personal interest may be slight. See, e.g., Salorio v. Glaser, supra; N.J. Chamb. Commerce v. N.J. Elec. Law Enforce. Comm. 82 N.J. 57 (1980). However, our form of government is a constitutional republic, not a pure democracy. The elected representatives of the people must govern. If state government acts constitutionally but not wisely, then the remedy of the people is at the ballot box not in a courtroom. The people cannot exercise rights of sovereignty reserved to state governments or ask a court to do so at their request. In that direction lies anarchy or judicial hegemony.
Plaintiffs in this case are thus in a real sense "strangers to the controversy" and, therefore, lack standing. See Bergen County v. Port of N.Y. Authority, et al. 32 N.J. 303, 307 (1960). Any controversy here is between plaintiffs' duly elected government, the State of New Jersey, and the government of the State of New York. If the two governments cannot resolve that matter amicably, then redress in the United States Supreme Court is available. Fundamental principles of law and government plainly demonstrate plaintiffs' lack of standing to maintain this suit.

*444 V.

CONCLUSION.
This Court lacks jurisdiction to resolve border disputes between states; or to modify or abrogate interstate compacts between states; or to declare the rights of the party states under such compacts. Exclusive jurisdiction of such actions rests in the United States Supreme Court. The doctrine of sovereign immunity bars this action. Principles of comity between states fundamental to our federal system require that this suit be dismissed. Plaintiffs lack standing to institute suit asserting rights or claims which are the prerogatives of sovereign states.
The Statue of Liberty was a gift from the people of France to the people of the United States of America. It was not a gift to New Jersey or to New York. The statue belongs to all of us. This action is dismissed with costs.
NOTES
[1] This is a refinement of an oral opinion.