Ronald STRUEBIN, Ancillary Administrator of the Estate of Joel F. Struebin; Kathleen S. Potter, Ancillary Administrator of the Estate of James K. Potter; and Davenport Bank and Trust, Ancillary Administrator of both Estates, Appellants,

v.

The STATE OF ILLINOIS and Caterpillar Tractor Company, Appellees.

No. 84–1180.

Supreme Court of Iowa.

March 19, 1986.

Rand S. Wonio of Lane & Waterman, Davenport, for appellants.

Robert E. Wagner, Ill. Asst. Atty. Gen., Springfield, Ill., for appellee State of Ill.

B. Douglas Stephens, Jr., and Mark A. Tarnow of Van Der Kamp, Cleaver & Stojan P.C., Rock Island, Ill., for appellee Caterpillar Tractor Co.

Considered by REYNOLDSON, C.J., and HARRIS, McGIVERIN, SCHULTZ, and WOLLE, JJ.

REYNOLDSON, Chief Justice.

This appeal involves an unfortunate sequela flowing from our decision in *Struebin v. Illinois*, 322 N.W.2d 84 (Iowa) (*Struebin I*), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 933 (1982). In that interlocutory appeal we held the full faith and credit clause of the United States Constitution did not prohibit suit against the State of Illinois in an Iowa court for death damages allegedly caused by its negligence in maintaining the Iowa portion of an interstate bridge pursuant to contract between the two states. *Id.* at 86–87.

The case, involving two deaths, was returned to district court where it was tried to a jury. Plaintiffs' decedents were found seventy percent at fault and defendant Illinois was found thirty percent at fault. Judgments on the verdicts were then entered against Illinois in the amounts of $57,070.59 and $61,729.41.

When these judgments were not paid, plaintiffs caused general writ of execution to issue to the Scott County sheriff with a direction to serve notice of garnishment, with interrogatories, on Caterpillar Tractor Company. That Illinois corporation's Iowa plant employs a number of Illinois residents, and Illinois law requires it to withhold and remit that state's income tax from each Illinois employee.

The above information may be garnered from Caterpillar's answers to the garnishment interrogatories, which also acknowledged that "[a]s of the date of service of the Notice of Garnishment, March 13, 1984, Caterpillar Tractor Co. was obligated to pay the Illinois Department of Revenue taxes deducted and withheld [from employees residing in Illinois] in the amount of $15,000.00." At the same time, Caterpillar claimed the described funds were exempt from garnishment for various reasons.

Plaintiffs responded with "Controverting Answers to Garnishment Interrogatories." A copy of this pleading, as well as the trial notice of the proceedings, were personally served on the Illinois Attorney General, in Illinois, more than ten days prior to trial. *See* Iowa Code § 642.14 (1983). The latter responded with a special appearance attacking trial court's jurisdiction on several grounds. The court was persuaded the property sought to be seized was used for a public purpose and "execution will not run against a sovereign state." The court then sustained the special appearance and dismissed the garnishment proceeding. Plaintiffs' timely appeal brings this issue of first impression before us for resolution.

I. Illinois first asserts trial court was without subject matter jurisdiction over it in the garnishment proceeding, because no proper service was had on that state. Illinois relies on two of our early decisions, *Wise v. Rothschild Brothers*, 67 Iowa 84, 24 N.W. 603 (1885), and *Williams v. Williams*, 61 Iowa 612, 16 N.W. 718 (1883), which indeed state that in absence of notice on the principal defendant trial court is without "jurisdiction" to render judgment against the garnishee. *Wise*, 67 Iowa at 86, 24 N.W. at 604; *Williams*, 61 Iowa at 615, 16 N.W. at 720.

■ Subsequent opinions of this court, however, made clear that garnishment actions in this jurisdiction, involving a nonresident, are in rem, and that trial court has subject matter jurisdiction when the fund, debt, or other obligation of the nonresident, in the hands of the garnishee, is properly attached. *See, e.g., Scott v. Wamsley*, 215 Iowa 1409, 1412, 245 N.W. 214, 215 (1932); *Leech v. Brown*, 172 Iowa 182, 184, 154 N.W. 440, 441 (1915).

> [T]he notice [to the principal defendant] is not jurisdictional in the sense that the proceedings are void, or nugatory until such notice is given. The garnishee cannot ordinarily obtain a discharge because no notice is given to the principal defendant. He may insist, however, that no judgment can properly be rendered against him until such notice is given.

*J.J. Smith Lumber Co. v. Scott County Garbage Reducing & Fuel Co.*, 149 Iowa 272, 276, 128 N.W. 389, 391 (1910). The provision for notice on the principal defendant was not added to our statutory law until 1880, *see* 1880 Iowa Acts ch. 58.[1] Its purpose is to permit that party to intervene and protect his or her rights, and also is intended to protect the garnishee. *Hubbard v. Des Moines Independent Community School District*, 323 N.W.2d 238, 241 (Iowa 1982).

■ Although modern terminology suggests a subclassification of this pro-

ceeding as quasi in rem, *see Mullenger v. Clause*, 178 N.W.2d 420, 425 (Iowa 1970); *Hansen v. Haagensen*, 178 N.W.2d 325, 326 (Iowa 1970), *cert. denied*, 401 U.S. 912, 91 S.Ct. 879, 27 L.Ed.2d 811 (1971); Restatement (Second) of Judgments §§ 6, 8 (1982), the basic requirement remains that the principal defendant need only be provided a notice that is reasonably calculated to give the defendant knowledge of the proceeding and an opportunity to be heard. *Mullenger*, 178 N.W.2d at 424–25. Further, the underlying contract relating to the maintenance of the interstate bridge, the tort committed in Iowa, and the resulting Iowa judgments are more than adequate to satisfy the minimum contacts standard of *Shaffer v. Heitner*, 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683, 705 (1977).

Plaintiffs here do not seek in personam judgments against Illinois; that was the result of *Struebin I*. We thus are not confronted with the jurisdictional principles required for personal judgments against defendants that we have applied in the analysis of cases like *Martin v. Ju-Li Corp.*, 332 N.W.2d 871, 874 (Iowa 1983), relied on by Illinois.

Iowa Code section 642.14 (1983) simply provides that the principal defendant must be given notice before judgment could be entered against the *garnishee*, and further provides it shall be served "in the same manner as original notices." We think by this language the legislature sought only to secure a type of service reasonably designed to insure that the principal defendant had actual knowledge of the garnishment proceeding. *See Propper v. Clark*, 337 U.S. 472, 488, 69 S.Ct. 1333, 1342, 93 L.Ed. 1480, 1494 (1949).

■ Here the necessary papers were served personally on the Illinois Attorney General in the same manner as an original notice, and proper return was filed in the garnishment proceeding. Illinois, however,

---

**1.** Iowa Code § 642.14 (1983) provides:
Judgment against the garnishee shall not be entered until the principal defendant shall have had ten days' notice of the garnishment proceedings, to be served in the same manner as original notices.

while conceding its attorney general is its chief legal officer, contends he "is not authorized by the Illinois Constitution nor statutes to accept service of process on behalf of the State of Illinois." Illinois further relies on *Beauchamp v. Iowa District Court*, 328 N.W.2d 527 (Iowa 1983), for the proposition that service upon an attorney does not give a district court personal jurisdiction over a defendant. *Id.* at 528. *Beauchamp*, however, involved service on a party's attorney in a collateral contempt proceeding. *Id.* That case is not controlling when, as here, the nonresident is a public body that operates only through its officers.

Notably, Illinois fails to point out who in that state should have received notice of the garnishment proceeding. The attorney general clearly is one of the officers in the executive branch. Ill. Const. art. V, § 1. The Illinois Constitution provides that the attorney general "shall be the *legal officer* of the State." Ill. Const. art. V, § 15 (emphasis added). *See also Gust K. Newberg, Inc. v. Illinois State Toll Highway Authority*, 98 Ill.2d 58, 66, 74 Ill.Dec. 548, 553, 456 N.E.2d 50, 55 (1983). The Illinois Attorney General is the proper officer to receive a notice of intent to commence an action against Illinois in the state's court of claims. *See* Ill.Ann.Stat. ch. 37, § 439.22–1 (Smith-Hurd Supp.1985).

Service on the Illinois Attorney General obviously apprised that state of the pending garnishment proceeding. The statutory purpose of Iowa Code section 642.14 was fulfilled. We find trial court has jurisdiction to proceed with the garnishment action. We thus are required to consider another contention made by Illinois which we consider controlling at this time.

II. We noted in *Struebin I* that Iowa remains free to close its courts to suits against a sister state as a matter of comity, even though such policy, under *Nevada v. Hall*, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979), is not dictated by constitutional command. 322 N.W.2d at 87. Though the present proceeding is not a direct action against Illinois, it asserts that

as a matter of comity and cooperative federalism Iowa should stay its hand in enforcing plaintiffs' judgment against the Illinois tax revenues that are the subject matter of this dispute. The Illinois Assistant Attorney General, in his recorded argument on the submission of this appeal, asserted Illinois is not flaunting the Iowa judgments recovered in an Iowa court trial arising out of the tort committed by Illinois in Iowa. Rather, he pointed out that Illinois is not unwilling to pay the judgment, and stated the vehicle and mechanism provided for such payment under Illinois law is through the Illinois Court of Claims.

Plaintiffs concede they have not attempted to enforce the Iowa judgment in Illinois. "A judgment entered in one State must be respected in another [under the full faith and credit clause of the Constitution] provided that the first State had jurisdiction over the parties and the subject matter." *Hall*, 440 U.S. at 421, 99 S.Ct. at 1188, 59 L.Ed.2d at 425; *see National Equipment Rental, Ltd. v. Estherville Ford, Inc.*, 313 N.W.2d 538, 541 (Iowa 1981). The general rule is "that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee v. Duke*, 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186, 191 (1963).

In *Struebin I*, we held Iowa courts had jurisdiction over Illinois when that state committed a tort within Iowa, relying on *Nevada v. Hall*. 322 N.W.2d at 86–87. Other state courts confronted with similar circumstances have interpreted *Hall* accordingly. *See, e.g., Peterson v. Texas*, 635 P.2d 241, 243 (Colo.App.1981); *Wendt v. County of Osceola, Iowa*, 289 N.W.2d 67, 69 (Minn.1979); *Ehrlich-Bober & Co. v. University of Houston*, 49 N.Y.2d 574, 579–83, 404 N.E.2d 726, 729–31, 427 N.Y. S.2d 604, 607–09 (1980); *Newberry v. Georgia Department of Industry & Trade*, 283 S.C. 312, 314–16, 322 S.E.2d 212, 213–14 (S.C.App.1984), *overruled on other*

*grounds, McCall v. Batson,* 285 S.C. 243, 250–54, 329 S.E.2d 741, 745–46 (1985). Even Illinois has given some indication that the doctrine of sovereign immunity, while protecting a state from suits in its own courts, may no longer protect that state from suit in a sister state. *See City of Shelbyville v. Shelbyville Restorium, Inc.,* 96 Ill.2d 457, 461, 71 Ill.Dec. 720, 722, 451 N.E.2d 874, 876 (1983). The question of jurisdiction over Illinois to enter the original judgment was fully and fairly litigated in *Struebin I.* Moreover, the merits of the cause were fully litigated in the subsequent trial that resulted in the judgments. Under *Durfee,* we have no reason to assume Illinois would not honor the Iowa judgments if plaintiffs attempt to enforce them in Illinois. *See* 375 U.S. at 111, 84 S.Ct. at 245, 11 L.Ed.2d at 191.

■ Illinois, of course, is not required to enforce the plaintiffs' judgments if to do so would clearly offend its fundamental public policies. *Hall,* 440 U.S. at 421–22, 99 S.Ct. at 1189, 59 L.Ed.2d at 426. In the submission of this appeal the Assistant Attorney General made no claim enforcement of these judgments would offend Illinois' fundamental policies. Illinois has no policy against compensating tort victims of that state's negligence. To the contrary, Illinois has a policy favoring compensation, as demonstrated by the framework of its court of claims. *See* Ill.Ann.Stat. ch. 37, § 439.8(d) (Smith-Hurd Supp.1985).

■ Plaintiffs argue they cannot enforce their judgment in Illinois because that state requires potential claimants against the state to file a notice of intent with the attorney general and court of claims within six months of injury or wrongful death. *See* Ill.Ann.Stat. ch. 37, § 439.22–1, .22–2 (Smith-Hurd Supp.1978) (The time period was extended to one year in 1983, *see* 1983 Ill.Laws 83–865, § 2.). Plaintiffs did not file such notices. Illinois, on submission of this appeal, did not suggest this requirement was applicable in this situation. Section 439.22–1 only requires that those persons who are about to commence an action in the court of claims against the state of Illinois for damages flowing from any injury or wrongful death file a notice within the time period set out. Ill.Ann.Stat. ch. 37, § 439.22–1 (Smith-Hurd Supp.1978). Here, plaintiffs have litigated their claims and obtained final judgments enforceable in a sister state under the full faith and credit clause of the Constitution. *See* U.S. Const. art. IV, § 1. Moreover, Illinois has adopted the Uniform Enforcement of Foreign Judgments Act to facilitate the enforcement. *See* Ill.Ann.Stat. ch. 110, §§ 12–601—12–617 (Smith-Hurd 1984). We are unpersuaded that plaintiffs would be unable to collect their judgments in Illinois.

■ We therefore hold, as a matter of comity and cooperative federalism, we will not open our courts to consider plaintiffs' proceedings to collect the judgments by garnishment in Iowa until such time as they can allege and prove they were unable to secure payment of these judgments in the Illinois courts. This holding, of course, is without prejudice to plaintiffs' future return to the Iowa court system to secure payment of their judgments upon the pleading and proof above specified. At this time, therefore, the district court dismissal of this garnishment action shall stand affirmed, although on different grounds than those relied on by that court.

AFFIRMED.