Ronald STRUEBIN, et al., Appellees,

v.

The STATE OF ILLINOIS, Appellant.

No. 87–446.

Supreme Court of Iowa.

April 13, 1988.

Neil F. Hartigan, Atty. Gen., and Robert E. Wagner, Sp. Asst. Atty. Gen. of Illinois, for appellant.

Rand S. Wonio, Lane & Waterman, Davenport, for appellees.

Considered by LARSON, P.J., and SCHULTZ, CARTER, NEUMAN, and SNELL, JJ.

SCHULTZ, Justice.

The issue presented by this appeal is whether judgments entered by an Iowa District Court against the State of Illinois may be enforced by garnishment of tax revenues owed to Illinois by a corporation located in Iowa. We hold that under the facts presented, the judgments may be so enforced.

This case arises from a 1978 automobile accident which resulted in two wrongful death judgments against the State of Illinois for its negligence in maintaining the Interstate–80 bridge over the Mississippi River. Although the accident occurred in Iowa, Illinois had agreed to maintain that portion of the bridge under a contract between the states.

This case has been before us twice already. In *Struebin v. State*, 322 N.W.2d 84, 85–87 (Iowa), *cert. denied*, 459 U.S.

1087, 103 S.Ct. 570, 74 L.Ed.2d 933 (1982) (*Struebin* I), we held that constitutional principles did not bar an action against Illinois in our courts and refused to grant immunity as a matter of comity. The case went to trial and judgments totaling $118,800 were entered against Illinois. In *Struebin v. Illinois,* 383 N.W.2d 516 (Iowa 1986) (*Struebin* II), we addressed the issue of how those judgments should be enforced. We held that as a matter of comity we would not allow garnishment in Iowa at that time because the plaintiffs had not sought to enforce their judgments in Illinois. *Id.* at 520. We also stated in *Struebin* II, that our decision would not prejudice plaintiffs' return to our courts if they were unable to enforce the judgments in Illinois. *Id.*

After *Struebin* II, plaintiffs filed complaints to enforce their judgments in the Illinois Court of Claims, that state's forum for claims against it. Illinois moved to dismiss the complaints on grounds that they were untimely. After five months passed with no action on the motions, plaintiffs filed a second petition for enforcement of their judgments in the Iowa District Court for Scott County. The district court granted the petition and ruled that the judgments could be enforced against the State of Illinois in the same manner as if it were a private nongovernmental litigant. Illinois appealed from this ruling. While the appeal was pending, the Illinois Court of Claims granted Illinois' motions to dismiss on grounds that plaintiffs' actions were not timely. We granted a limited remand to allow the district court to amend its findings of fact to include this ruling.

On this appeal, Illinois contends that the district court erred in ruling that plaintiffs could enforce their judgments by garnishment of tax revenues owed by an Illinois corporation located in Iowa. Initially, we reject plaintiffs' contention that this issue was decided in *Struebin* II. While it is true that issues decided on a prior appeal are the law of the case and may not be reconsidered on a subsequent appeal, *see Lawson v. Fordyce,* 237 Iowa 28, 32, 21 N.W.2d 69, 73 (1945), we have not yet addressed this issue. In *Struebin* II we stated:

> [W]e will not open our courts to consider plaintiffs' proceedings to collect the judgments by garnishment in Iowa until such time as they can allege and prove they were unable to secure payment of these judgments in the Illinois courts. This holding, of course, is without prejudice to plaintiffs' future return to the Iowa court system to secure payment of their judgments upon the pleading and proof above specified.

383 N.W.2d at 520. Although the arguments made on this appeal are virtually identical to arguments made in *Struebin* II, our disposition of the prior case made it unnecessary to decide the present issue. Therefore, the question is properly before us. To analyze the dispute we will first discuss whether Illinois' status as a sovereign state precludes the garnishment and then discuss whether we should extend such an immunity as a matter of comity.

■ I. *Immunity.* Illinois contends that coequal sovereigns cannot seize one another's property. It maintains that its tax revenues are immune from execution or garnishment by the Iowa courts. We believe that the United States Supreme Court has resolved this issue in *Nevada v. Hall,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed. 2d 416 (1979). In *Hall,* the Court held that the State of Nevada was not immune from suit in California for injuries caused by a state employee's negligence within the State of California. *Id.* at 426, 99 S.Ct. at 1191, 59 L.Ed.2d at 428 (nothing in federal constitution requires California to grant Nevada immunity from negligence claims). The Court traced the history of the sovereign immunity doctrine and concluded that "it affords no support for a claim of immunity in another sovereign's courts." *Id.* at 416, 99 S.Ct. at 1186, 59 L.Ed.2d at 422. It further reasoned that such immunity would implicate concerns about the forum state's own sovereignty. *Id.* The Court also rejected arguments that the United States Constitution provided for such immunity in either article III, the eleventh amendment, or the full faith and credit clause. *Id.* at 421–24, 99 S.Ct. at 1188–90, 59 L.Ed.2d at

425–27. Finally, the Court rejected a "penumbra" argument that the constitution implicitly establishes a union in which states must respect each other's sovereignty by extending immunity. *Id.* at 424–25, 99 S.Ct. at 1190, 59 L.Ed.2d at 427–28.

The import of the *Hall* case to this appeal is that Illinois' claim of immunity must fail. We are urged to make a distinction between jurisdiction for purposes of obtaining a judgment and jurisdiction for purposes of enforcing it. However, it is clear that such a distinction was not intended by the Court in *Hall.* While the majority did not expressly reject this distinction, the dissenters assumed that under the majority rule judgments against sister states could be enforced. Justice Blackmun makes the following observation:

> States probably will decide to modify their tax-collection and revenue systems in order to avoid the collection of judgments. In this very case, for example, Nevada evidently maintains cash balances in California banks to facilitate the collection of sales taxes from California corporations doing business in Nevada. Under the Court's decision, Nevada will have strong incentive to withdraw those balances and place them in Nevada banks so as to insulate itself from California judgments.

*Id.* at 429, 99 S.Ct. at 1192–93, 59 L.Ed.2d at 430–31 (Blackmun, J., dissenting) (citation to pleadings omitted); *see also id.* at 443, 99 S.Ct. at 1199–200, 59 L.Ed.2d at 439 (Rehnquist, J., dissenting) (decision will induce states to isolate assets from foreign judgments).

Illinois argues that *Hall* should not be applied to allow garnishment in this case because to do so would impose a substantial threat to our constitutional system of cooperative federalism. In so arguing, Illinois cites to a footnote in the Court's opinion where it stated that California's exercise of jurisdiction imposed no such threat. *Id.* at 424 n. 24, 99 S.Ct. at 1190 n. 24, 59 L.Ed.2d at 427 n. 24. We do not see a substantial threat to cooperative federalism in our decision. An example of where such a threat would exist is *Guarini v. New*

*York,* 215 N.J.Super. 426, 521 A.2d 1362 (Ch.Div.), *aff'd,* 215 N.J.Super. 293, 521 A.2d 1294 (App.Div.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 71, 98 L.Ed.2d 34 (1987), where the language in this footnote was used to distinguish *Hall.* In *Guarini,* citizens of New Jersey were challenging the authority of New York to exercise authority over two islands on the New Jersey side of the Hudson River. *Id.* at 429, 521 A.2d at 1364. New York had been granted this authority through an interstate compact with New Jersey. The court saw the action as a challenge to the governmental authority of New York and held that permitting the action would "violate principles of cooperative federalism." *Id.* at 438, 521 A.2d at 1368.

In this case the governmental authority of Illinois is not being litigated. We are not addressing the issue of whether Illinois can deny plaintiffs relief in its own court of claims. Rather, we are allowing our own courts to enforce a judgment entered in this state. The only potential threat to cooperative federalism in this case is the claim that Iowa cannot enforce its own judgments.

■ Illinois makes two other arguments in support of its immunity claim. We find neither one persuasive. Allowing garnishment of tax revenues is not an interference with Illinois' sovereign power to levy and distribute taxes. The power to tax has already been exercised and the funds garnished were already designated as tax revenue owed to Illinois. Execution and garnishment requires a specific identification of the judgment debtor's assets. Here, the particular assets happen to be tax revenues set aside but not yet paid. There is no interference with Illinois sovereign power to tax.

■ We also reject the argument that garnishment of the Illinois corporation violates due process by potentially subjecting it to double liability for the tax revenues. Iowa Code section 642.10 (1985), expressly provides that the corporation is exonerated from its liability to Illinois to the extent it must pay under the garnishment. If Illinois seeks to recover this money from the

corporation, its courts will be obligated to give full faith and credit to the Iowa discharge. *See Chicago, R.I. & Pac. Ry. v. Sturm,* 174 U.S. 710, 718, 19 S.Ct. 797, 800, 43 L.Ed. 1144, 1147 (1899). In *Sturm,* the Court held that a garnishee's discharge under Iowa law obligated a Kansas court to give the discharge the same effect it would have had in Iowa. *Id.* Illinois' own supreme court has recognized this principle as well. *See Taylor v. Taylor,* 44 Ill.2d 139, 142–43, 254 N.E.2d 445, 447 (1969) (citing *Sturm* ). Under these cases, double liability is not a risk.

In summary, Illinois has no right to immunity from enforcement of the judgments against it in this state.

 II. *Comity.* While we are not required to grant immunity from garnishment to Illinois, we are free to do so as a matter of comity. In fact, we have previously refrained from exercising this jurisdiction to allow Illinois the chance to provide for enforcement in its own court of claims. *Struebin* II, 383 N.W.2d at 520. However, Illinois refused to allow enforcement by dismissing the actions as untimely. Under the facts of this case we will not, as a matter of comity, give effect to Illinois' refusal to enforce the judgment.

In *Struebin* I, we addressed the issue of whether a statutory limit on damages provided by Illinois law should apply to this dispute. We stated:

> Iowa's interest in full compensation outweighs Illinois' interest in extending its statutory limitation on recovery to its Iowa torts. Iowa's policy is a legitimate attribute of its own sovereignty.

322 N.W.2d at 87. This time around, Illinois would have us abandon our interest in full compensation for accident victims in this state, in favor of its own interest in avoiding the untimely enforcement of judgments against it.[1] While Illinois is free to apply its own statute of limitations in its court of claims we conclude that we should not as a matter of comity apply it in our courts.

III. *Conclusion.* We conclude that the plaintiffs are free to proceed in accordance with the trial court ruling permitting them to garnish funds owed to the State of Illinois that are located within this state.

Plaintiffs have asked us to impose sanctions against the State of Illinois for taking a frivolous appeal. *See* Iowa R.Civ.P. 80(a). We do not believe sanctions are appropriate under these circumstances.

AFFIRMED.

---

1. There is no dispute that the action to enforce    is timely in Iowa.